STATE OF MISSOURI, Respondent, *vs.* WM. J. MOORE, Appellant.

1. *Arson—Indictment—Property, description of as "house or building."*—An indictment for arson is not fatally defective for describing the property burned as a "house or building," the words being evidently used in a synonomous sense, and to designate the same object.

2. *Identity of name and person.*—Identity of name is *prima facie* identity of person.

3. *Instructions should be taken as a whole.*—If instructions taken as a whole present the law of the case with substantial clearness, that is sufficient.

4. *Arson by tenant in possession—Ownership by widow of landlord—Dower— Mansion house.*—Under the statutes of Missouri (Wagn. Stat., 454, § 5) a tenant may commit arson in respect to the house occupied by himself. And in such case proof of ownership by another of the fee is not necessary. A special or qualified title in such other person is sufficient. Thus, where it appeared that at the time of the burning the landlord was dead, leaving a widow with unassigned dower interest, and having a right to the dwelling as her "mansion house," and to whom the prisoner sustained the relation of tenant, she has a sufficient possessory right and a sufficient title to be described in the indictment as the owner. And proof that she had resided there with her husband for years prior to his death, and occupied the same for years afterward, and there being nothing to show that her husband owned any other home, would raise the presumption that it was her mansion house.

*Appeal from Dade County Circuit Court.*

*J. F. Duckwall*, for Appellant.

I. The indictment is insufficient, and no testimony could be introduced under it, and defendant could not be convicted upon it.

II. The house burned was, *quoad* the indictment, the house of the defendant, and it was not arson if he burned it.

The language of our statute, "the house of another," is the language of the common law definition of arson, viz: "the willful and malicious burning of the house of another." (4 Blackst. Com., 220; Whart. Am. Crim. Law, § 1658; Bish. Crim. Law, §§ 38, 39, and cases cited; Id., § 43; Whart. Am. Crim. Law, §§ 1671, 1672, 1674, and note citing §§ 250, 1577; 2 Bish. Cr. Law, 23; People vs. Van Blarcum, 2 Johns., 105.) "Arson is an offense against the security of the habitation rather than the property.

When, therefore, we say that the house burned must be the house of another, the meaning is, that it must be that of another to occupy." (2 Bish. Cr. Law, § 39, and cases cited.) If a tenant burn the house leased it is a waste, or a malicious trespass under our statute. The house, in arson, is the same as the house in burglary, and one can no more commit arson by burning his own dwelling, than he can burglary by breaking into his own house (except that if there be a human being in the house at the time, the act is made arson in the first degree under our statute). Suppose that Nancy Adkins, the pretended owner, had set fire to the house occupied by the defendant. Whose house would have been burned? Would she not have been guilty of arson for burning the house of another? (2 Bish. Crim. Law, § 40.) The house occupied by a tenant is his house—his "castle"—and not that of the landlord.

Instruction No. 2 given for the prosecution was erroneous in declaring that if Mrs. Adkins was entitled to the possession of the house, her ownership was sufficiently shown. Mere right of possession does not constitute ownership. Instruction No. 3 was faulty for the same reason, and because it declared that, as Lee's widow, she was as a matter of course entitled to the possession. The evidence fails to show that the house was her husband's mansion house.

III. There was a fatal variance between the allegations of the indictment and the proof as to the ownership of the house burned.

IV. The testimony all taken together is insufficient to warrant a conviction.

V. The court erred in permitting Mary J. Moore, the wife of the defendant, to testify, she being an incompetent witness, by reason of the marriage relation.

*Hockaday, Att'y Gen'l*, for Respondent.

I. The words " house and building," are used as synonomous terms in the indictment. (State vs. Ellis, 4 Mo., 474 ; Brown vs. Commonwealth, 8 Mass., 59 ; State vs. Gibert, 13

Vt., 647; People vs. Smith, 15 Cal., 408; Com. vs. Churchill, 2 Mat., 119; United States vs. Porter, 6 McLean, C. C. R., 186; 3 Yeates, 417.)

II. The defendant was indicted under section 5, p. 454, Wagn. Stat., which describes an offense against the destruction of property, and not an offense solely against the habitation of a person, as was arson at common law.

III. A tenant may commit arson under our statute. (10 Ohio, 287.) A party may be convicted of arson for burning his own house. (19 N. Y., 537–540; 3 How. Pr., 226.)

SHERWOOD, Judge, delivered the opinion of the court.

The defendant was indicted and convicted of arson. The indictment is based on sec. 5, ( Wagn. Stat., 454) which designates and provides for punishment of arson in the third degree. A number of errors have been assigned as cause for reversal of the judgment below, and they will be briefly noticed.

## I.

There is no merit in the point that the indictment charges that the defendant burned "a house or building," these words being evidently used as terms of synonomous import, (State vs. Ellis, 4 Mo., 474) and intended to designate one and the same building; and therefore there is no uncertainty as to the allegation in reference to the subject matter of the offense—nor the charge the accused was called upon to meet. (Brown vs. Commonwealth, 8 Mass., 59; Wagn. Stat., 1090, § 27.)

## II.

Mary J. Moore, the woman who was living with the defendant at the time of the burning, as his wife, was a competent witness, for the reason that a prior marriage of defendant with one Mary Cavender was proved in the most satisfactory manner by the justice of Dade county, who performed the ceremony less than two years before the trial, and, the loss of the record of the marriage having been established, the docket of the justice clearly confirmed his statements in refer-

ence to the matter. It is true the magistrate could not state whether the Mary Cavender, who was produced in court, was the same person with whom the marriage of defendant took place, but this was not necessary. Identity of name is *prima facie* evidence of identity of person, as this court has held on more than one occasion. (Flournoy vs. Warden, 17 Mo., 435; Gitt vs. Watson, 18 Mo., 274; 2 Greenl. Ev., § 278, d.) In addition to that, the marriage with Mary Cavender was not controverted, and it was proved by one witness who had known her from girlhood, that she lived in Dade county, where the marriage of defendant took place, and was known by the name entered on the docket of the justice as having been married to defendant. (1 Greenl. Ev., § 339; 3 Id., § 206.) For the above given reasons no error was committed in holding Mary J. Moore as incompetent to establish the marriage of herself to the defendant in Cedar county, subsequent in date to that testified to by the justice; and besides it was not shown, nor attempted to be shown, but that the first marriage, whose validity was unquestioned, remained still of binding force.

### III.

There is no just ground of complaint as to the instructions given for the State, or refused the defendants, those given on either side having presented the law of the case, as a whole, with sufficient and substantial clearness. The chief ground, however, of reversal on which defendant relies is the entire insufficiency of the evidence to sustain the charge, and the alleged fatal variance between the allegation in the indictment that the property burned was that of Mrs. Noah Adkins, and the evidence offered in support of that allegation; the defendant contending that the house burned, he being in possession at the time of the burning, was his own house, and therefore it was not arson, even if he burned it; and upon this theory some of the defendant's refused instructions were asked.

The evidence, although for the most part circumstantial, yet pointed with great directness to the defendant as the

criminal, and the circumstances attendant upon the commission of the crime were strengthened by recent and previous threats, as well as other conduct of defendant subsequent to the burning of the house. Indeed, taking the whole facts of the case, as detailed on the trial, it would be difficult to arrive at any other conclusion than that which the jury reached.

Were this a prosecution at common law there might be abundant authority found to sustain the idea that the tenant could not be held guilty of arson in burning a house of which he had the occupancy. (Holmes' case, 2 East P. C., 1023; Bemis case, id., 1026, and cases cited.) For the distinguishing characteristic of arson at common law, is, that it is an offense immediately against the possession; and therefore if a tenant, however short his term, set fire to a house he occupied, it was not arson. But under our statutory provisions of arson, the offense, especially in the third degree, is directed not at the possession, but at the property of another, thus avoiding many of those "unseemly niceties" as to possession, which formerly baffled prosecutions and enabled the guilty to escape. Under our statute even a tenant may be convicted of arson. And this was the *status* of the defendant towards Mrs. Noah Adkins, and she therefore had such a beneficial interest in the property as to have been able to maintain an action for its recovery against the tenant. In addition to that she had a dower interest in the premises, and was entitled to remain in possession until the assignment of her dower, and had such a possessory right as would, if transferred, have enabled the transferee to have successfully resisted an action for the possession of the premises. This was so held in Jones vs. Manley (58 Mo., 559). No importance is to be attached to the fact that it was not affirmatively shown upon the trial that the mansion house of Mrs. Adkin's deceased husband was the one which was burned, as the testimony discloses that she and her husband had resided on the premises, and in the house, for years before his death, and that she had so resided there for years subsequent to that event, and it does not at all appear in evidence that her husband was the owner of any

other plantation. In consequence of this it may well be assumed, in the absence of aught in the record to the contrary, that the house burned was the mansion house of the deceased husband. For these reasons it is not thought that there is a fatal variance between the allegation and the proof as to the property being that of Mrs. Adkins. It is true she did not own the fee, nor was it necessary for the purposes of this accusation that this should be proven at the trial. All that the ends of justice required was the building should be sufficiently identified by the allegation of the indictment, and that those allegations should find support in the testimony adduced, and this was done. It would be as absurd as it would be impossible to require grand jurors in finding, and prosecuting attorneys in preparing indictments, or courts, during the progress of a criminal trial, to go into nice and critical examinations as to the ownership of real property. Were this allowed, offenders would frequently go "unwhipped of justice," in consequence of the tangled intricacies of the title to a piece of land. In a charge of larceny, proof of special or qualified property, as of a bailee or the like, is sufficient to sustain an allegation of ownership, and it is not seen why a similar rule should not obtain in charges of arson, where one is in possession by a tenant, and has such a qualified ownership as will debar even the heir until assignment of dower occurs.

Holding these views, the judgment must be affirmed. The other judges concur.