[No. 3864.]

LIPSCHITZ v. THE PEOPLE.

1. CONSPIRACY—INDICTMENT.

In an indictment for conspiracy to commit a crime, the indictment must contain every element necessary to constitute that crime, as fully as if the indictment was for its perpetration.

2. SAME—ARSON.

The mere burning of the house of another is not arson. Only willful and malicious burning constitutes the crime. An indictment that charges that the defendant "feloniously, wilfully and maliciously did conspire to burn" a certain house is defective because it does not charge that the burning contemplated was willful and malicious. The words "feloniously, wilfully and maliciously" qualify and apply to the conspiracy only, and not to the burning.

3. ARSON—OCCUPANCY OF PROPERTY.

Under the statutes of Colorado arson is a crime against property rights as well as against the habitation. The phrase "the property of any other person" relates to dwelling houses as well as to other build-

ings, and a dwelling house or other building, if it belong to any other person, is the subject of arson, even though it be occupied by the person committing the offense.

4. ARSON—OWNERSHIP OF PROPERTY—INDICTMENT.

The legal title of property conveyed by deed of trust to secure a debt is in the trustee, and an indictment for conspiracy to commit arson properly alleges the ownership of such property in the trustee. The grantor in a deed of trust may be guilty of arson of the property although he is in possession and occupancy of the property, and has a right to redeem from the trust deed.

5. ARSON—CONSPIRACY—MALICE.

In a prosecution for conspiracy to commit arson where the ownership was alleged in the trustee in a deed of trust, the fact that the evidence showed the purpose of the burning to be to collect insurance money does not disprove malice towards the trustee, or owner of the property. Malice may be inferred from the mere fact of unlawful burning, or of a conspiracy to commit arson, and the fact that malice was also shown against the insurance company does not make it any less malicious against the owner.

6. PRACTICE—ELECTION—REFUSAL TO REOPEN CASE.

In a prosecution for conspiracy to commit arson where the indictment in the first count, and the one under which the prosecution elected to proceed, alleged ownership in the trustee named in the deed of trust, the refusal of the trial court to reopen the case after the close of the evidence, and the election of the count by the prosecution, to permit defendant to show that the trustee had left the state and therefore the title was vested in the successor in trust, was without injury to defendant where in subsequent counts in the indictment, ownership was alleged in the successor in trust, and also in the holder of the note as beneficial owner, so that had such evidence been introduced, the prosecutor might have elected to proceed under another count.

*Error to the District Court of Arapahoe County.*

THE first count of the indictment, which is the only one material on this review, charges that the defendant and six other persons, naming them, "feloniously, wilfully and maliciously did conspire, co-operate and agree together to burn and cause to be burned a certain residence building of the property of Peter Winne, trustee, situate * * * in the town of Colfax, in said Arapahoe county, in the state of Colorado." The defendant Marks Lipschitz demanded a separate trial;

was convicted under the first count, and sentenced to the penitentiary for two years.

The statutes construed are found in Session Laws, 1891, p. 25 (3 Mills' Ann. Stats. sec. 1294), this being the one under which the indictment was returned; and our arson statute, which is found in 1 Mills' Ann. Stats. sec. 1225 (Gen. Stats. 1883, sec. 749). They are as follows:

"Section 1294. If any two or more persons shall conspire or agree, falsely and maliciously, to charge or indict, or be informed against, or cause or procure to be charged or indicted or informed against any person for any criminal offense, or shall agree, conspire or co-operate to do, or to aid in doing any other unlawful act, each of the persons so offending shall on conviction, in case of a conspiracy to commit a felony, be confined in the penitentiary for a period of not less than one year, nor more than ten years, and in case of a conspiracy to commit a misdemeanor, be fined in any sum not exceeding one thousand dollars, or imprisoned in the county jail not exceeding one year, or both such fine and imprisonment."

"Section 1225. Every person who shall wilfully and maliciously burn or cause to be burned any dwelling house, kitchen, office, shop, barn, stable, storehouse, warehouse, factory, mill, pottery, or other building, the property of any other person, or any church, meeting-house, school-house, state-house, court-house, work-house, jail or other public building, or any boat or other water craft, or any bridge of the value of fifty dollars erected across any of the waters of this state, such persons so offending shall be deemed guilty of arson, and upon conviction thereof shall be punished by imprisonment in the penitentiary for a term not less than one year nor more than ten years; and should the life or lives of any person or persons be lost in consequence of any such burning as aforesaid, such offender shall be deemed guilty of murder, and shall be indicted and punished accordingly."

Mr. J. E. ROBINSON, for plaintiff in error.

Mr. BYRON L. CARR, attorney general, Mr. CALVIN E. REED and Mr. GEORGE H. THORNE, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The errors assigned and the material facts may be grouped under the following heads:

1. The indictment is insufficient to sustain the verdict and sentence, or to permit the introduction of evidence thereunder.

2. The offense of arson, which was the object of the conspiracy, is one against occupancy and habitation, and not against ownership and title; and inasmuch as the defendant owned the premises subject to the lien of a trust deed, and was in possession and occupying the dwelling house thereon, when burned, he cannot be guilty of arson in burning it, or of a conspiracy to commit that crime.

3. If it be assumed that the crime of arson is one against ownership and title, and not possession or occupancy, the building in question cannot properly be said to be the property of the trustee named in the deed of trust given to secure a debt.

4. The malice necessary to be shown must be malice against the owner of the property; whereas the facts show that the malice by which defendant was actuated was malice against an insurance company which had a fire insurance policy upon the building, to obtain the amount of which was the defendant's object in burning the building.

5. The court erred in refusing to require the prosecution to elect upon which count of the indictment it would rely, and in refusing to allow the defendant to reopen his case when the prosecution made its election, and in holding certain evidence which he then offered to introduce as incompetent and irrelevant.

Under our conspiracy statute the object of the conspiracy must itself be an unlawful act, if committed, and the doing of

a lawful act in an unlawful way is not within its provisions. *Connor v. The People*, 18 Colo. 373; *Miller v. The People*, 22 Colo. 530. And since no punishment is provided for a conspiracy to do an unlawful act, except such as would be felonies or misdemeanors if committed, it would seem that the unlawful act must also be a crime.

Whether or not the latter proposition be true, the avowed intention of this indictment was to charge the defendants with entering into a conspiracy to commit the crime known as arson. In apt words, the conspiracy is sufficiently alleged; but it is strenuously contended that the object of the conspiracy is not shown to be a crime. Arson is a recognized offense at common law, and under the doctrine of *McNamara v. The People*, 24 Colo. 61 (48 Pac. Rep. 541), it might have been sufficient, and probably would be, had the pleader stated the object of the conspiracy to be to commit the crime of arson by burning the building designated; in other words, by designating the purpose of the conspiracy by its common-law name. See, also, 2 Enc. of Law, 917, *et seq.*, and cases cited. But the pleader did not see fit to do that. He attempted to state the ingredients of the crime. In such a case, the law is that when the purpose of the conspiracy is claimed to be the commission of a crime, the indictment must contain every element necessary to constitute that offense, as fully as if the indictment was for its perpetration. *State v. Parker*, 43 N. H. 83; *Connor v. Eastman*, 48 Am. Dec. 596; *West v. The People*, 137 Ill. 189; *Scudder v. State*, 62 Ind. 13; *Hartmann v. Commonwealth*, 5 Pa. St. 60; 4 Enc. of Pl. & Pr. 712, *et seq.*

Now the mere burning of the house of another is not arson at the common law or under our statute. It is only the willful and malicious burning that constitutes the crime. In this all the authorities agree. *State v. Carroll*, 85 Iowa, 1. The attorney general recognizes this, and so would have us decide that the word "felonious" characterizes the conspiracy, and the words "willful and malicious" qualify its object, viz : the burning; but no rule of construction that we know of will

permit of such an arbitrary transposition, and forced interpretation, of words as this decision would require. All three of these words evidently were intended by the pleader to apply to the conspiracy; and, taking them in their connection, we can come to no other conclusion than that they do apply to the conspiracy, and not to the arson.

It follows that this indictment is not merely faulty in form, but fatally defective in substance in that it fails to aver an unlawful act as the object of the conspiracy. It is good neither under our statute nor at the common law.

2. It is conceded by counsel on both sides that, at the common law, arson was a crime against the habitation, rather than against property rights. 2 Am. & Eng. Ency. of Law (2d ed.), 924, 935; 2 Bishop's New Crim. Law, chap. 2; 1 Wharton's Criminal Law (10th ed.), chap. 11; *Mary v. The State*, 81 Am. Dec. 60, and notes.

To cite all the cases to this effect, as well as those so construing certain statutes, would unduly prolong the opinion. They are collated in the foregoing text-books and leading case. The question here is whether our statute has effected any change in the common-law rule. We think that it has. Not only are a large number of things embraced within the statute that were not subjects of arson at the common law, but the language employed evidences an intention to enlarge its common-law meaning. The phrase "*the property of any other person*" relates to, and qualifies, "dwelling house," as clearly and fully as it does "store house" or "other building." That is, one may commit arson by burning a store house, or any other building, the property of any other person, just as certainly as he can by burning a dwelling house, the property of any other person. In other words, the building, whether a "dwelling house," or "other building," if it belong to any other person, is the subject of arson, even though it be occupied by the defendant himself; or, to put the proposition in another form, the apparent intent of the legislature was not only to continue the common-law offense against the security of the dwelling house, but to protect property rights as well;

and when it is considered that any kind of a building, if it is the property of another, whether occupied or not, regardless of its value and irrespective of its proximity to a dwelling house, and whether or not its remoteness renders almost impossible any danger to the security of a dwelling house by the burning of such other building; and when it is further considered that a bridge of the value of $50.00 is made the subject of arson, it seems quite conclusive that the plain intention of the law-making power was to protect property rights, and to punish the burning of the property of another person, as well as to protect occupancy or possession.

We are not without direct authority in favor of this conclusion, although it may be conceded that more cases can be found apparently against, than in favor of it; yet many of the contrary decisions are not directly in point, and are based upon statutes quite unlike ours, while the following are under statutes which, in substantial respects, are like ours, and they are in harmony with our view. *Garret v. The State*, 109 Ind. 527; *Allen v. State*, 10 Ohio St. 287; *People v. Simpson*, 50 Cal. 304; *Shepherd v. The People*, 19 N. Y. 537; *McClaine v. Territory*, 1 Wash. 345; *State v. Biles*, 6 Wash. 186; *State v. Hurd*, 51 N. H. 176; *State v. Moore*, 61 Mo. 276.

*Allen v. State, supra,* is quite in point, for the Ohio statute construed is substantially the same as our own. *State v. Fish,* 27 N. J. Law, 323, holds that the "dwelling house of another" means a dwelling in the possession of another, and this shows that the phrase "dwelling house *of another*" is quite different from the expression "dwelling house, *the property of another person.*" The latter is the subject of arson by a tenant in possession of property belonging to another person.

It is only fair to say that the supreme court of California in the case of *People v. De Winton*, 113 Cal. 403, has returned to the common-law definition of arson. Whether this is because of a difference between the penal code under which this last decision was made, and the prior statute upon which the contrary ruling was based in *People v. Simpson, supra,* does not clearly appear. However that may be, the learned

court in the last opinion does not refer in any way to *People v. Simpson*, but seems to rely, in a measure, on the case of *People v. Gates*, 15 Wendell, 159, which at that time, and long before, had been expressly overruled by the court of appeals of New York in the case of *Shepherd v. The People*, *supra*, although the latter case is, in turn, said to be overruled by *Woodford v. The People*, 62 N. Y. 117.

Upon a careful examination of our statute, in the light of the authorities cited, and upon principle, we must hold that the protection of property rights under our statute is made as prominent as the protection of the security of the dwelling house, and is included therein.

3. But it is said that, under the facts of this case, the ownership is not properly laid in Peter Winne, as trustee. The argument is that the defendant himself was the owner of the property in the sense of the term as used in the statute; and as he was in actual possession at the time of the alleged conspiracy, the prosecution must fail. Under the doctrine of *Stephens v. Clay*, 17 Colo. 489, *Belmont Mining Co. v. Costigan*, 21 Colo. 471, *Fisk v. Reser*, 19 Colo. 88, and *Reid v. Sullivan*, 20 Colo. 498, the legal title of this property was in Peter Winne. The interest which the defendant had in it was a contingent interest, depending upon his payment of the notes secured by the trust deed; and this ownership consisted simply of an equity of redemption. As we have held that one object of our statute was to protect the rights of property, and as, under our decisions, Peter Winne holds the legal title to this property in trust for the benefit of some other person, the ownership of the property was properly laid in him, even though defendant had a contingent interest in it, and was occupying it.

4. The evidence shows, beyond doubt, that the defendant was guilty of the act attempted to be charged, and it appears, also, that his desire and intention were thereby to secure the amount of the insurance policy. Seizing upon this point, counsel says that the defendant was actuated by express malice against the insurance company, and that is not sufficient to

sustain the charge of malice against the owner, and it is essential that the proof show the latter. We may concede that defendant was actuated by express malice against the insurance company. But in arson, as in other crimes, a defendant may, as expressed by Mr. Bishop, have two intents; but if he has the law's evil intent, his guilt remains, even though he has some other intent; that is to say, even if this defendant was actuated by malice against the insurance company, his conviction should stand in so far as this element of the crime is concerned, if he had malice against the owner of the property. Now, it does not follow that because malice existed against the insurance company it did not also exist against the owner; and the court properly instructed the jury substantially to the effect that the jury might, from the facts and circumstances of the case, infer malice against the owner, and the law is that the jury may infer this from the mere fact of an unlawful burning, or of a conspiracy to commit arson. 2 Bishop's New Criminal Law (10th ed.), § 15.

5. The refusal of the court to compel the prosecution to elect under which count of the indictment to proceed, cannot here be urged as error, because the prosecution, of its own accord, elected to proceed under the first count. But the real objection under this assignment is that when this election occurred the court refused to allow the case to be reopened for the production of evidence by the defendant to the effect that at, and prior to, the time of the alleged conspiracy, Peter Winne, trustee, had permanently removed from Colorado with no intention of returning. The point sought to be made is, since in this contingency, the trust deed provided that the successor in trust named in the instrument shall become the new trustee, and the premises become vested in, and all power and authority devolve upon, him, the same as if he had been made trustee in the first instance; if this evidence was true, the ownership as laid was not established.

It appears from the record that the request for reopening the case came after the court began reading its instructions to the jury; and this assignment of error might be resolved

against the plaintiff in error by a resort to the well known rule that the granting or refusal of the application was entirely within the discretion of the trial court, and its ruling will not be set aside except for gross abuse of discretion, which is not shown. But there is another reason why plaintiff in error may not be heard to complain, and this is found in the fact that in subsequent counts of the indictment the ownership was laid in the successor in trust and also in the holder of the note, as the beneficial owner; so that, had the case been reopened at the request of the defendant, the prosecution might have elected to proceed under some other appropriate count of the indictment. We conclude that no injury resulted to defendant by denying his request, and no benefit would have inured to him, had the case been reopened.

It is a matter of regret that the court, in the light of the facts disclosed by this record, feels compelled to reverse this judgment; but it appearing so clearly to our minds that the indictment is insufficient for the reasons given, the judgment must be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

*Reversed.*