**The PEOPLE of the State of Colorado ex rel. Stuart A. VANMEVEREN, District Attorney, Eighth Judicial District of Colorado, Petitioner,**

v.

**The DISTRICT COURT In and For the COUNTY OF LARIMER, State of Colorado, and the Honorable John–David Sullivan, One of the Judges Thereof, Respondents.**

No. 80SA363.

Supreme Court of Colorado, En Banc.

Nov. 10, 1980.

---

Stuart A. VanMeveren, Dist. Atty., Stephen J. Roy, Terence A. Gilmore, Deputy Dist. Attys., Fort Collins, for petitioner.

No Appearance for respondents.

QUINN, Justice.

In this original proceeding the People seek relief in the nature of mandamus directing the respondent court to reinstate a criminal information against Ralph Loren Bollig (defendant) charging him with first–degree arson, section 18–4–102(1), C.R.S. 1973 (1978 Repl. Vol. 8). The respondent court dismissed the information after a preliminary hearing on the ground that the defendant's conduct did not constitute arson as a matter of law. We issued a rule to show cause and now make that rule absolute.

On March 3, 1980, the People filed a direct information alleging:

"That on or about the 17th day of February A.D., 1980, in the County of Larimer and State of Colorado, RALPH LOREN BOLLIG, did unlawfully, feloniously and knowingly, set fire to, burn and cause to be burned a building and occupied structure of ALBANY GOVERNMENT EMPLOYEES' CREDIT UNION, located at

3836 E. Mulberry, without the consent of said victim, contrary to Colorado Revised Statutes 1973, 18–4–102, as amended, and against the peace and dignity of the same People of the State of Colorado."

A preliminary hearing was held on July 3, 1980, and the evidence established the following facts with respect to the charge.

The defendant purchased a motor home adapted for overnight accommodations and valued at approximately $15,000.[1] The Albany Government Employees' Credit Union (credit union) had a security interest in the home as a result of a $10,000 loan to the defendant. There was an outstanding balance of $9,500 on the loan. On the evening of February 17, 1980, a fire occurred in the motor home as the result of exploding propane gas ignited by a pilot light in the stove. The defendant admitted to the police that he deliberately burned the motor home because he had experienced recurring mechanical problems that were never repaired adequately and he considered the home a "lemon". He previously had applied for insurance against fire loss and believed that it was in effect on the date of the fire. Apparently, however, the insurance was not in effect due to the defendant's issuance of an insufficient–funds check resulting in non–payment of the premium.[2]

The defendant did not challenge the People's evidence that he knowingly burned the motor home. Rather, he argued that because he held legal title to the property, he did not burn the property of another; therefore, he could not be prosecuted under section 18–4–102(1), C.R.S. 1973 (1978 Repl. Vol. 8), which requires that the burned building be the property of another. The respondent court dismissed the information. Relying on section 18–4–101(3), C.R.S. 1973 (1979 Supp.), which defines the property of

---

1. Section 18–4–101(1), C.R.S. 1973 (1978 Repl. Vol. 8), provides that a vehicle which is adapted for overnight accommodations of persons is a building for purposes of arson. The defendant's motor home is a building under this section.

2. If there had been effective insurance coverage on the motor home at the time of the fire, the defendant could have been charged with third–degree arson under section 18–4–104(1), C.R.S. 1973 (1978 Repl. Vol. 8), which prohibits intentionally damaging any property by means of fire with intent to defraud.

another as property in which someone other than the defendant has a possessory or proprietary interest, the court concluded that the credit union's security interest in the motor home was akin to a chattel mortgage and, as such, it did not amount to a possessory or proprietary interest at the time of the burning. We hold that even though the defendant held legal title to the motor home, the credit union's security interest constituted a sufficient proprietary interest to render the defendant subject to prosecution for first–degree arson under the circumstances present here.

## I.

At common law arson was a crime against possession or occupancy, rather than ownership. R. Perkins, *Criminal Law* at 226 (2d ed. 1969); R. Anderson, 2 *Wharton's Criminal Law and Procedure* § 401 (1957); see Annot., 76 A.L.R.2d 524 (1958). For example, if a building was leased by its owner and he alone held the title to the premises, the owner could nevertheless be prosecuted for arson if he set fire to his own building while it was occupied by another. Conversely, a tenant in sole possession could not be prosecuted for setting fire to leased premises even though he held no ownership interest in the property. *See Perkins, supra* at 226; *Model Penal Code* § 220.1, Comment 4 at 40 (Tent. Draft No. 11, 1960).

In *Lipschitz v. People*, 25 Colo. 261, 53 P. 1111 (1898), the Colorado Supreme Court had occasion to construe a predecessor arson statute similar in many respects to section 18–4–102(1), C.R.S. 1973 (1978 Repl. Vol. 8).[3] The statute in *Lipschitz* defined arson to include the willful and malicious burning of a building which is "the property of any other person." The court held that the statute manifested a legislative intent to criminally proscribe not only the common–law offense against habitation but conduct directed against property rights as well:

"In other words, the building, whether a 'dwelling house,' or 'other building,' if it belong to any other person, is the subject of arson, even though it be occupied by the defendant himself; or, to put the proposition in another form, the apparent intent of the legislature was not only to continue the common–law offense against the security of the dwelling house, but to protect property rights as well . . . .

\*     \*     \*     \*     \*     \*

"Upon a careful examination of our statute, in the light of the authorities cited, and upon principle, we must hold that the protection of property rights under our statute is made as prominent as the protection of the security of the dwelling house, and is included therein." 25 Colo. at 266, 268, 53 P. at 1113.

■ The legislative intent in the current arson statute to protect more than occupancy or possession becomes manifest when one reads section 18–4–102(1), which defines first–degree arson, in conjunction with section 18–4–101(3), which defines the "property of another." The former section provides in pertinent part:

"A person who knowingly sets fire to, burns, causes to be burned, or by the use of any explosive damages or destroys . . . any building or occupied structure of another without his consent commits first degree arson."

Under section 18–4–101(3), property is that of another "if anyone other than the defendant has a possessory or proprietary interest therein." Section 18–4–102(1), therefore, encompasses the possessory and proprietary interests of another in a building occupied by a person who burns that building. *See Lipschitz v. People, supra.* The determinative question in this proceeding is whether the credit union's security interest in the motor home amounted to a possesso-

---

**3.** The issue before the court in *Lipschitz* was whether an indictment alleging that the defendant "feloniously, wilfully and maliciously did conspire to burn" a certain house was defective because it did not charge that the burning itself was willful and malicious, as provided in the then existing arson statute. The court held that the words "feloniously, wilfully and maliciously" applied to the conspiracy and not to the burning, and the indictment was invalid.

ry or proprietary interest therein for purposes of an arson prosecution.

## II.

The respondent court concluded that the credit union's security interest in the motor home at the time of the burning was in the nature of a chattel mortgage and, therefore, the credit union had neither the right of possession nor any proprietary interest in that property. We concur in the court's conclusion that the credit union lacked a possessory interest in the property but disagree with the conclusion that it lacked a proprietary interest therein.

### A.

■ Under early common–law doctrine a chattel mortgagee retained title to the property subject to defeasance upon payment of the debt by the mortgagor. *Hurt v. Hubbard*, 41 Colo. 505, 92 P. 908 (1907); *Newman v. People*, 4 Colo.App. 46, 34 P. 1006 (1893). Now, such a security interest is governed by Article 9 of the Uniform Commercial Code, section 4–9–101 *et seq.*, C.R.S. 1973.[4] Article 9 does not specify whether title is located in the secured party or the debtor. *See* Official Comment to section 4–9–101, C.R.S. 1973. In the absence of a contrary contractual provision, a security agreement in the nature of a chattel mortgage creates a lien for the benefit of the secured party and title reposes in the debtor or mortgagor. *See People v. Armijo*, 197 Colo. 91, 589 P.2d 935 (1979). Similarly, Article 9 does not determine the location of title after default. Although the secured party has an inchoate possessory interest in the disposition of the property after default, sections 4–9–503 and 4–9–504, C.R.S. 1973, this interest remains subject to the debtor's right to redeem the collateral. Section 4–9–506, C.R.S. 1973.

The credit union was not in possession of the motor home at the time of the fire and no evidence was offered at the preliminary hearing establishing that the defendant was in default on his loan payments. Therefore, the credit union did not have a possessory interest in the motor home when the fire occurred.

### B.

Although the credit union lacked a possessory interest in the motor home, it did have a sufficient proprietary interest therein to subject the defendant to an arson prosecution in this case.

■ "Proprietary interest" is a protean concept the meaning of which emerges from contextual use and application. It has been used to characterize a multiplicity of interests, such as control and dominion, which are the primary incidents of ownership, *e. g., Stroh v. Blackhawk Holding Corp.*, 48 Ill.2d 471, 272 N.E.2d 1 (1971); the right of indefinite possession, which is an interest not necessarily co–extensive with legal title, *Restatement of Torts* § 223, Comment d at 574 (1934); and a quasi–property right of use, *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). In the statutory scheme of arson, there is no indication of a legislative intent to limit the statutory prohibitions to destruction or impairment of interests emanating from legal title only. The term "proprietary interest", section 18–4–101(3), C.R.S. 1973 (1979 Supp.), is sufficiently broad to include a legally recognized security interest, such as that of the credit union, which the defendant had neither the right nor the authority to defeat or impair, even though he also had an interest in the secured property. *See People v. Ross*, 41 Ill.2d 445, 244 N.E.2d 608 (1969), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969).[5] Such construction comports

---

**4.** Section 4–9–102(1)(a), C.R.S. 1973 (1979 Supp.), provides that Article 9 applies to any transaction, regardless of its form, which is intended to create a security interest in personal property. Section 4–9–105(1)(h), C.R.S. 1973 (1979 Supp.), defines goods as all things that are movable at the time the security interest attaches. This definition includes motor

homes. Moreover, section 4–9–102(2), C.R.S. 1973, specifically provides that Article 9 applies to security interests created by chattel mortgage.

**5.** The *Ross* case involved an Illinois statute expressly defining a building of another as one in which a person other than the offender has

with present day notions of security law, avoids hypertechnical results stemming from property concepts developed in a bygone era, and furthers legislative intent in extending the protection of the arson statute to property rights as well as the traditional right of occupancy or possession.

In this case the credit union's security interest was a property interest of significant economic value. When measured by the $9500 outstanding on the loan, its value exceeds in dollar amount the value of the defendant's economic interest in the property by a ratio of almost two to one.[6] If the defendant had defaulted on his loan payment and failed to redeem the collateral, the credit union had the right to sell or otherwise dispose of the home in satisfaction of its claim. Section 4–9–504, C.R.S. 1973 (1979 Supp.).

As well as having an intrinsic economic value, a security interest such as here present resembles a traditional ownership interest in other respects. As holder of a security interest, the credit union had the right to assign or transfer that interest to a third party for value. Section 4–9–405, C.R.S. 1973; see *Western Food Plan v. District Court,* —— Colo. ——, 598 P.2d 1038 (1979); *O'Hara Group Denver v. Marcor Housing,* 197 Colo. 530, 595 P.2d 679 (1979); *County Commissioners v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d 1251 (1978). Furthermore, although the defendant could have terminated the credit union's interest in the motor home by paying off his indebtedness in full, he had neither the right nor the authority to defeat or impair that inter-

est in any other manner, and certainly not by his actions in this case.

We conclude, therefore, that the credit union's security interest in the motor home qualifies as a proprietary interest under section 18–4–101(3), C.R.S. 1973 (1979 Supp.), and that the defendant may be lawfully prosecuted under section 18–4–102(1), C.R.S. 1973 (1978 Repl. Vol. 8), for burning the building of another.

The rule is made absolute and the cause is remanded to the respondent court with directions to reinstate the information against the defendant and to proceed as otherwise provided by law.

LOHR, J., dissents.

LOHR, Justice, dissenting:

I respectfully dissent.

The majority's interpretation of what constitutes a "proprietary interest" within the context of the arson statute violates a fundamental tenet of statutory construction. In recognition of the necessity to give all persons fair notice of what constitutes a criminal act, penal statutes which proscribe certain conduct must be strictly construed in favor of the accused. *People v. Home Insurance Co.,* —— Colo. ——, 591 P.2d 1036 (1979); *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977). It is basic to this tenet that courts should not "depart from the plain meaning of words in search of a legislative intention the words themselves do not express." *People v. Mooney,* 87 Colo. 567, 571, 290 P. 271, 272 (1930). In my view, the majority has done just that.

---

an interest which the offender has no authority to defeat or impair. The open–endedness of the term "proprietary interest" in section 18–4–101(3), C.R.S. 1973 (1979 Supp.), lends itself to the construction herein adopted, particularly in view of the patent legislative purpose of protecting property interests, and the judicial construction placed upon the former arson statute in *Lipschitz v. People,* 25 Colo. 261, 53 P. 1111 (1898). Section 2–4–203(1), C.R.S. 1973, lists as aids in statutory construction of an ambiguous statute the object sought to be attained and former statutory provisions upon the same or similar subjects.

**6.** In many cases the holder of a lien or security interest in property will have a greater financial interest in the property than the legal owner. For example, where a $100,000 residence is encumbered by a $90,000 mortgage, the lender–mortgagee would suffer a far greater financial loss than the owner–mortgagor should the home be destroyed by fire. While the mortgagee may require the mortgagor to obtain adequate insurance to protect the mortgagee's interest, insurance coverage does not in any manner diminish the value of the mortgagee's interest.

In its normal use, the term "proprietary interest" connotes an ownership interest in the subject property. *See Black's Law Dictionary* 1358 (4th ed., rev. 1968); *Webster's Third New International Dictionary* 1819 (1961). A lien created as security for an obligation is not an ownership interest and therefore is not included within the plain meaning of "proprietary interest." It may be that sound public policy would dictate that "property of another" should have been defined to include security interests. *See* section 18–4–101(3), C.R.S. 1973. However, any such policy is not expressed by the language of the statute. We may not extend the reach of the arson statute either by implication or construction. *People v. Home Insurance Co., supra.*