WALTER F. DALE ET AL. V. COUNCIL BLUFFS SAVINGS
BANK.*

FILED JULY 22, 1902. NO. 11,879.

Commissioner's opinion, Department No. 3.

**Agister: EXCLUSIVE REMEDY: STATUTE: DEPARTURE: CONSENT:
QUESTION OF FACT: JURY.** Although, in ordinary cases, an
agister's remedy is exclusively that which is provided by
statute, there is no reason why this method may not be
departed from, with the preference and consent of the parties
interested; and in the case at bar it is *held* that the question
whether such consent was given was one of fact, which should
have been left to the determination of the jury.

ERROR from the district court for Douglas county.
Tried below before SLABAUGH, J. *Reversed.*

*Timothy J. Mahoney, J. H. Larson* and *James A. C. Kennedy,* for plaintiffs in error.

*Kennedy & Learned, contra.*

AMES, C.

This cause was argued and submitted at the same time as
those of *Becker v. Brown* and *Becker v. Dale, ante,* page
264, decisions in which are announced herewith. For a statement of facts in addition to such as is contained herein,
reference is made to the opinion in those cases. As was
there decided, Brown and Dale were in possession of the
cattle which are the subject of this controversy, in virtue of
valid agisters' liens thereon in their favor, respectively.
The second mortgage executed by Woollen to Becker and
Degan will, for the purposes of this opinion, be treated as
valid as between the parties thereto, but it was subject to
the liens of the agisters. The mortgage soon after its execution had been assigned to the defendant in error the
Council Bluffs Savings Bank, and the note which it was

*Rehearing allowed. Judgment of reversal adhered to. See opinion,
page 694, *post.*

given to secure had been indorsed and delivered to it; but the cattle being in the possession of the agisters, the bank had constructive notice of their liens. When Perry, the agent of the mortgagees, demanded the cattle from Brown and Dale, and afterwards took them and drove them to Atlanta, he did so for the avowed purpose of shipping them to South Omaha, and selling them, and applying the funds to or towards the payment of the mortgage debt. After Perry had demanded the cattle for this purpose, and had asserted that Woollen had abandoned all claim to them, Brown and Dale went and saw the latter, who said to them: "You see that you get your feed lien satisfied out of the cattle. So far as I am concerned, I can do nothing for you, but you get your feed lien out of the cattle, and it will be perfectly satisfactory to me." He said he did not expect to be able to take any part. He was very much broken in health. His health was completely shattered, and he was under the doctor's care and considered himself in a very critical condition at the time. He expected Becker and Degan would take the cattle and pay the feed bill. He said he had written these men (meaning Becker and Degan) to come and get the cattle and fix it up and take them, that he was not able to do anything. After Brown and Dale had recovered possession of the cattle by replevin from Becker and Degan, they shipped them to South Omaha upon the same cars that Perry had procured to be furnished by the railroad company for that purpose. Perry does not seem to have participated in this shipment, but there seems to have been at least tacit consent between him and the agisters that the animals should be sold in that market; the contention between them being as to which lien should be first satisfied out of the proceeds of the sale. When the cattle arrived at South Omaha they were taken in replevin by the savings bank, and upon a trial the court instructed the jury to return a verdict for the plaintiff. All these facts were before the court; the records in both the former replevin suits having been offered and admitted as evidence. We think that this instruction was erroneous.

Conceding that in ordinary cases, the agister's remedy is exclusively that which is provided by the statute, and that his lien will be forfeited by an attempt, without the consent of his bailor, to remove the cattle from the county or to dispose of them in any other manner than by advertisement and sale, as the statute directs, still we can see no reason why this method may not be departed from with the preference and consent of the parties interested, and we think that the consent of Woollen, the bailor, if given in good faith and without the intent or probable effect to defraud or injure the subsequent lien-holder, would have been sufficient. If the mortgagee or its agent consented thereto, it should, of course, not be heard to complain because that course was adopted. Whether such consent was or was not given expressly or by implication, is an inference of fact to be drawn from all the circumstances, and in our opinion was one which was within the province of the jury, and not of the court, to make. For these reasons it is recommended that the judgment of the district court be reversed and a new trial granted.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

. REVERSED.

The following opinion on rehearing was filed on April 30, 1903:

Commissioner's opinion, Department No. 3.

1. **Agister**: LIEN: FORECLOSURE: THIRD PERSON: JUNIOR LIEN-HOLDER. An agister may, under circumstances having no tendency to injure any third person, adopt, with the consent or acquiescence of his bailor, other means than a statutory foreclosure for the satisfaction of his lien. In such a case a junior lienholder has no ground for complaint if the means adopted do not injure or imperil his interests.

2. **Bailor**: CONSENT: ACQUIESCENCE: QUESTION OF FACT. Under the circumstances of this case, the question whether the bailor has so consented or acquiesced is one of fact for the jury. ·

AMES, C.

This case is submitted on reargument after a rehearing granted from a former decision found on page 692, *ante.* It is not deemed necessary to restate the facts recited in that opinion, and in the opinion to which it refers. The rehearing was granted because the defendant in error contended that we had misapprehended the date of a conversation between Woollen, the owner and mortgagor of the cattle, and Brown and Dale, the agisters, and that said date is of controlling force in the decision of the controversy. The mention of this date in the opinion is, however, rather indefinite, than incorrect. The mortgage under the authority of which Perry claimed the right to take possession of the cattle, or at least the only valid mortgage in evidence, and of which the agisters are to be presumed to have had notice, provided that in case of default of the mortgagor the animals should be sold for the satisfaction of the mortgage debt at the Union Stock Yards at South Omaha, in Douglas county, after twenty days' advertisement of the sale in a newspaper published in that county. It was after Perry had told the agisters that Woollen had notified the mortgagees to take the cattle under the instrument, and had signified to them his intention so to do, that the conversation in question took place. These representations were an assertion of the right of possession, and substantially a demand for it, and seemed to have prompted Brown and Dale to visit Woollen, to whom they, at least in part, repeated them, and from whom they received a confirmation of them. The opinion is therefore literally correct in saying that "After Perry had demanded the cattle for this purpose [namely, taking them to South Omaha for sale], and had asserted that Woollen had abandoned all claim to them, Brown and Dale went and saw the latter, who said to them: 'You see that you get your feed lien satisfied out of the cattle. So far as I am concerned, I can do nothing for you, but you get your feed lien out of the cattle, and it will be perfectly satisfactory to me,' " etc.

It was after both these conversations that Perry did seize the cattle and drive them to Atlanta for the purpose of shipping them to South Omaha. This purpose Woollen had not only stipulated for in his mortgage, but had then recently directed, by letter, his mortgagees to carry into execution. Of this purpose, and of Woollen's concurrence therein, all the parties connected with the transaction had full knowledge.

Shortly after Brown and Dale had taken the cattle in replevin, they did ship them to South Omaha, at which place, it is entirely clear from the record, all parties were willing and desirous that they should be sold. The only matter in controversy was whether the agisters' lien or the mortgage debt should be preferred in payment from the proceeds. It is not testified that Woollen expressly consented that the shipment or sale should be made by the plaintiffs in error, but the matter was of such notoriety and affected his interests so closely that he must be presumed to have known of the shipment, and from the fact that he has never, so far as appears, made any objection thereto, it would be competent for a jury to infer that he impliedly consented to or acquiesced in it. If he did either, we do not conceive that the holder of the mortgage has any just ground of complaint. It is a mere volunteer. The agisters, having both the superior lien and the possession, were not in privity with it, by contract or otherwise, and owed it no duty, except to refrain from any act tending to injure or defraud it, and to care for the animals without negligence. The statute provides agisters with a remedy for the enforcement of their lien, but it would be an anomaly to hold that a different means for its satisfaction may not be adopted, with the consent or acquiescence of their bailor under circumstances having no tendency to . injure any third person.

There is not in this record the slightest evidence of any intent on the part of Brown and Dale, or of either of them, to repudiate the title of their bailor, Woollen, or to injure or diminish his interest in the cattle in any respect or de-

gree, or to defeat the lien of the mortgage, unless it is to be inferred solely from the fact that they shipped them for sale to the market where he and the mortgagee had stipulated that they should be sold for the satisfaction of the mortgage. Under all the circumstances of this case it is not unreasonable to suppose that he impliedly consented to or acquiesced in such shipment; and as this is a question of fact, we are still of the opinion that it should have been left to the jury to say whether he did so. Whether Perry was agent for the mortgagees, or of their assignee, the defendant in error, is also a question of fact to be decided by a consideration of all the circumstances, and is also, if material, to be answered by the jury.

It is therefore recommended that the former decision of this court be adhered to, and that the judgment of the district court be reversed and a new trial granted.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former decision of this court be adhered to, and that the judgment of the district court be reversed and a new trial granted.

REVERSED AND REMANDED.

NOTE.—*Agister.*—See 62 Nebr., 269, note.