JAMES S. SAMPLE, Appellant, v. VERNER-KELLY LIVE STOCK COMMISSION. COMPANY, Respondent.

Kansas City Court of Appeals, June 12, 1916.

1. **REPLEVIN: Agister's Lien: Mortgage: Kansas Agistment.** Where the cattle, the parties and the agistment were all in Kansas, as well as the mortgage, the rights of the agister and those of the mortgagee, were governed by Kansas law. So that where mortgaged cattle were pastured under circumstances which give the agister a lien therein, and the owner of the cattle secretly shipped them to market in Missouri, the lien of the agister took precedence over the lien of the mortgage as that is the rule in Kansas.

2. ——: ——: ——: **Replevin to Enforce Lien.** Under the circumstances above stated, the agister could follow the cattle to Missouri and then replevin enough of the cattle to satisfy his lien. And the suit herein was not a suit to enforce the lien but only to get possession of the cattle so that the lien could thereafter be enforced.

3. ——: ——: ——: ——: **Jurisdiction. Cause of Action.** The justice in Missouri before whom the suit was brought had jurisdiction to entertain such replevin suit. And the fact that in deciding the case, he was required to construe and apply Kansas law, did not rob him of jurisdiction.

The cause of action in replevin arose in Missouri since that is where the defendant refused to surrender the cattle upon plaintiff's demand.

Appeal from Jackson Circuit Court.—*Hon. Frank C. Johnson,* Judge.

REVERSED AND REMANDED (*with directions*).

*Stubenrauch & Hartz* for appellant.

*J. W. Farrar* and *J. R. Kaspar* for respondent.

TRIMBLE, J.—This is an action in replevin. Plaintiff was the owner of a pasture in Greenwood county, Kansas, and on August 21, 1913, one Wiershing, being the owner and in possession of eighty head of cattle, put them into plaintiff's possession to be kept on said pasture for the rest of the grazing season for the sum of $240 the owner agreeing not to take the cattle away without first paying the pasturage.

At the time this was done the defendant held two chattel mortgages on the cattle which were on record in Greenwood county.

On Sunday, September 28, 1913, Wiershing, without plaintiff's knowledge or consent, moved said cattle from the pasture and shipped them to the defendant at Kansas City, Missouri, where they arrived on the morning of September 29, 1913, and were there taken possession of by defendant.

As soon as plaintiff discovered the cattle had been shipped, he demanded of Wiershing and the defendant payment of his bill for pasturing the cattle, claiming an agister's lien thereon. They both refused to pay. Whereupon plaintiff demanded of defendant the possession of a sufficient number of said cattle, to-wit, five or six head, to protect and satisfy his aforesaid lien. Defendant refused. Thereupon, on the same day,

to-wit, September 29, 1913, plaintiff brought this replevin suit before a justice of the peace in Kaw Township Jackson county, Missouri, wherein Kansas City, is located, where the defendant has its place of business, and where the cattle then were. The purpose of the suit was to get possession of five head of said cattle, so that plaintiff might thereafter proceed to enforce his agister's lien for pasturing said cattle.

Plaintiff prevailed before the justice and defendant appealed to the circuit court where the case was, by agreement, tried before the court without a jury.

The trial court made a finding of facts in accordance with those hereinbefore stated, and, in addition to these, further found that plaintiff's bill was reasonable; that the actual value of the five head replevied was $388.20; that defendant sold the remainder of said cattle and applied the proceeds toward the satisfaction of its chattel mortgages, but that there yet remains due on one the sum of $77.96 and on the other $312.43 with interest, (which, of course, is more than the value of the cattle replevied).

The court further found that "at the time when plaintiff and said Roy Wiershing made their contract, and at all time involved in this suit, it was the law of the State of Kansas, as follows, to-wit:

"The keepers of livery stables, and all others engaged in feeding horses, cattle, hogs or other stock, shall have a lien upon such property for the feed and care bestowed by them upon the same, and if reasonable or stipulated charges for such feed and care be not paid within sixty days after the same becomes due, the property or so much thereof as may be necessary to pay such charges and the expenses of publication and sale, may be sold as provided in this Act."

The court further found that "at all said times it was the law of the State of Kansas as laid down by the Supreme Court of the State of Kansas that the

lien of the agister, under said statute, was prior in right to that of mortgagee under a chattel mortgage, althought the chattel mortgage might have been executed and recorded before the agistment began, and further that under the statute aforesaid the agister had the right to retain possession of the property put in his care until his charges were paid.''

The court further found the value of plaintiff's interest in the property and also assessed his damages for the detention at the sum of $25; that plaintiff's lien for the feed and care of said cattle was superior to the chattel mortgages of defendant; and that he was entitled to the possession of the five head of cattle described in the writ. Accordingly the court rendered judgment in plaintiff's favor for possession of the cattle and for $25, assessed as damages for the detention thereof.

Afterwards, at the same term, the court, on its own motion, set aside the judgment ''for the reason that the justice of the peace before whom the cause originated had no jurisdiction of the cause of action or the subject-matter,'' and, dismissing plaintiff's petition, rendered judgment for defendant.

After plaintiff's motion to set aside the dismissal and to grant a new trial had been overruled, the plaintiff duly appealed.

It thus appears that the sole ground upon which the judgment in plaintiff's favor was set aside is that the justice of the peace had no jurisdiction.

The cattle involved in this litigation were in Kansas; the parties to the agistment of the cattle were there, and so were the defendant's chattel mortgages. The rights of the parties were, therefore, fixed by the laws of that State. The questions whether plaintiff had an agister's lien, and whether such lien is superior or inferior to defendant's prior chattel mortgages, are

193 App. 43

both governed wholly by Kansas law and not by Missouri law.

Defendant says that, inasmuch as the Missouri law makes a prior mortgage superior to an agister's lien, plaintiff's right to possession of the cattle can only be upheld by virtue of Kansas law, which, unlike Missouri, makes the agister's lien superior to a prior mortgage, and, therefore, plaintiff, in order to sustain his cause, must necessarily invoke the Kansas law. All of which is, doubtless, very true; and plaintiff does not deny this fact. But defendant contends that a Missouri justice of the peace has no power or authority to try any case wherein plaintiff's cause of action rests, in any degree, upon the laws of a foreign State, or where, in order to sustain a case, it is necessary for the justice to interpret foreign statutes. Defendant urges this as one of its grounds for the claim that the justice, before whom the case originated, had no jurisdiction.

The point raised is certainly novel, and we know of no authority holding to that effect. It is undoubtedly true that the jurisdiction of a justice of the peace is statutory and strictly limited by the statutes of this State. But we know of no statute denying to a justice of the peace the right to try a case whenever the decision thereof may necessarily involve the interpretation of a foreign law or statute. Indeed, section 1736, Revised Statutes 1909, provides that whenever a cause of action has accrued under or by virtue of the laws of any other State or territory such cause of action may be brought "in *any* of the courts of this State" by the person entitled to the proceeds of such cause of action by the laws of the State where the cause of action accrued, provided such person is authorized to bring such action by the laws of the foreign State.

Defendant, as a further ground for contending that the justice had no jurisdiction, says that under our

law, section 8239, Revised Statutes 1909, an agister's lien can only be enforced in *the township where the agister resides,* and as the plaintiff does not reside in Kaw township, the justice had no jurisdiction to entertain this suit. But this suit is not for the enforcement of the agister's lien as contemplated by section 8239. It is an action in replevin to recover possession of the cattle so that, out of them, the agister's lien may *afterwards* be enforced. Section 8239, therefore, has nothing to do with the bringing of this replevin suit.

At first glance it would look as if the jurisdiction of the justice in this case was governed by section 7758, Revised Statutes 1909, fixing $350 as the limit of justices' jurisdiction, but, in this case, the limit of the jurisdiction is raised to $500 by section 4 of an Act of the Legislature approved March 25, 1913, found in Session Acts of Mo. 1913, page 395. As the value of the property sought to be recovered and the damages claimed for the detention thereof are, in the aggregate, within that amount, the justice had original jurisdiction under said Act so far as the value of the property and the damages are concerned.

As this was an action in replevin, plaintiff could properly bring his suit in Kaw township, Jackson county, Missouri, since, although he did not reside there, yet the defendant did and the cattle were there. [Sec. 7399, R. S. 1909.] That was where the cause of action *in replevin* finally accrued or at least became complete, because there is where the defendant refused, after demand, to give them up. It is difficult to define the phrase "cause of action." However, speaking in general terms and as applied to this case, we may say the cause of action is made up of plaintiff's right on one side and the obligation, duty or wrong of the defendant upon the other. Plaintiff's cause of action may, therefore, be said to consist of his right to possession of the cattle under the laws and decisions of Kan-

sas plus defendant's refusal to surrender possession on demand. [Pomeroy's Code Remedies (4 Ed.), sec. 346; Hales v. Raines, 162, Mo. App. 46; Sperry v. Cook, 247 Mo. 132.] Plaintiff would not have had a cause of action against *this defendant* until the latter had refused plaintiff's demand for the cattle.

Under the statute of Kansas, section 4809, Dassler's Gen'l Stats. 1909, quoted in the trial court's finding, the plaintiff had an agister's lien on the cattle. [Brown v. Holmes, 13 Kans. 482; Kelsay v. Lane, 28 Kan. 225.] This lien charge for the whole herd entitled plaintiff to ask for the possession of only five of them, since he has the right to enforce the lien for keeping the whole herd upon the five head. [2 Cyc. 319; Barse v. Adams, 48 S. W. 1023; Yeardsley v. Gray, 140 Pa. St. 238.] The agister's lien in Kansas is held to be superior even to a prior mortgage. [Case v. Allen, 21 Kans. 217; Kelsay v. Layne, 28 Kans. 218; Everett v. Barse Live Stock Com. Co., 115 Mo. App. 482.] And the right to take possession of the cattle and enforce his lien is not destroyed by the surreptitious taking of the cattle out of Kansas into Missouri. [Everett v. Barse Live Stock Com. Co., supra.]

So far as this case of replevin is concerned, the plaintiff, if he had obtained possession of the cattle could have returned them to Greenwood county and there proceeded to enforce his lien in accordance with the method pointed out by the statutes of Kansas. But, since the removal of the cattle from that place to Kansas City was done by the owner and the cattle were sold in the manner at the place set out in the defendant's mortgages, and defendant was also consenting to and profiting by the removal, the latter cannot be heard to complain because the cattle have not been taken back to Kansas for the purpose of enforcing the lien. [Dale v. Council Bluffs Savings Bank, 65

MARCH TERM, 1916. 677

Gees Comm. Co. v. Ill. Cent. R. R. Co.

Neb. 692.] This situation was brought about by the owner and the defendant.

It is urged by defendant that certain remarks in Central Nat'l Bank v. Brecheisen, 65 Kans. 807, holds that plaintiff's lien is inferior to defendant's chattel mortgages. Defendant misinterprets the meaning of those remarks. All that is meant in that case is that if the agister, through failure to observe some requirement of the statute in the enforcement of his lien, cannot reply upon the statute but must fall back upon the lien given by contract, aside from and without regard to the statute, then such contract, being his and the owner's act, and not arising by force of the statute, will be subject to a prior chattel mortgage. But in this case, the agister had not lost his statutory right to a lien at the time the cattle were taken, nor had he lost such right at the time he brought this replevin suit. In other words, plaintiff has a lien by vrtue of the statute though the grazing of the cattle was made a matter of contract. Indeed, defendant's pleading, in effect, concedes that plaintiff's lien is a statutory one.

The judgment is reversed and the cause remanded with directions to reinstate the judgment which was set aside by the trial court. The other judges concur.