FRED ALTERGOTT AS FRED ALTERGOTT FURNITURE COMPANY, RESPONDENT, v. MARIE O'CONNOR, APPELLANT.*

Kansas City Court of Appeals. April 30, 1928.

*Corpus Juris-Cyc References: Justices of the Peace, 35CJ, section 103, p. 536, n. 73; section 134, p. 556, n. 32; p. 557, n. 39.

*Gamble, Brown & Allen* for respondent.

*James B. O'Connor* for appellant.

*Prince & Harris, amicus curiae.*

WILLIAMS, C.—This is an action in replevin brought before W. J. CAIRNS, Justice of the Peace. At the time the suit was instituted and tried, the said Justice of the Peace held his office by virtue of a commission issued by the county court of Jackson county, Missouri. The record of his appointment is as follows:

"In the Matter of Petition of Divers Citizens of Kaw Township, Jackson County, Missouri, for the Appointment of an Additional Justice of the Peace for the said Kaw Township, outside of the Present Eight Present Justice Districts, Now is presented and filed a petition for the appointment of an additional justice of the peace for Kaw Township, Jackson County, Missouri; and the court having examined said petition and being well advised in the premises, finds that said petition is signed by more than twelve qualified voters of such township living more than five miles from the nearest justice in said township; and it is therefore ordered that said petition is and the same is hereby granted and the court does hereby appoint W. J. CAIRNS a resident of the immediate neighborhood of the petitioner's and who resides more than five miles from any other justice of the peace for said township, as a justice of the peace of said Kaw Township, Jackson County, Missouri, to reside and hold office outside of any of the eight justice of the peace districts of said Township, and for a term expiring on the general election day of the year when justices of the peace shall be next elected for said township as provided by law (vice Sutton R. Layton under appointment dated December 3, 1918) at which said time said office shall become vacant without any further action of this court."

The action was filed November 27, 1926. Defendant failed to appear and default judgment was taken.

The evidence shows that the county court by the following order, which is authorized by the statute, divided Kaw Township into eight Justice of the Peace Districts. The order is as follows:

"The County Court of Jackson County, Missouri, by virtue of Section No. 6090, of the Revised Statutes of 1889, divided said Kaw Township, into Eight Justices of the Peace districts, and established the boundary lines of each district." This order was duly approved February, 1890.

The evidence further shows that this case, before W. J. CAIRNS, was tried in the Sheidley Building, Kansas City, Missouri. The Sheidley building was located outside the district for which Justice CAIRNS was appointed, and is in District No. 3 of Kaw Township. This evidence went in without objection.

The return of the constable is as follows;

"Executed this order in Kaw Township, Jackson County, Missouri, and I further executed the order by reading the same to the within-named defendant, Marie O'Connor. Signed 27th day of November, 1925.

"FRANK I. HUDSON, Constable,
"By C. A. MAJOR, Deputy Constable."

Defendant appealed and in the circuit court filed a plea to jurisdiction. This plea was overruled and appellant, after an unsuccessful motion for a new trial, and in arrest of judgment, defendant brings the case here on appeal.

Section 2924, Revised Statutes 1919, provides:

"Justices of the peace to have jurisdiction coextensive with county—exception. Every such justice of the peace shall have original jurisdiction coextensive with the county in which he shall be elected, except in landlord and tenant cases, and·in cases of forcible entry and detainer and of unlawful detainer, which shall be brought before a justice of the peace in the township where the property to be affected is situated.

We think this section gives Justice Cairns jurisdiction in replevin. [Verner v. Kelly, 193 Mo. App. 670.]

The question still remains whether or not Justice CAIRNS was holding his court outside his district when he was trying this case, and second, if so, were his acts, outside his district, legal.

We will first discuss whether or not Justice CAIRNS was holding his court outside of his territorial jurisdiction when he was trying this case. This is a question of first impression in this State.

The section under which Justice CAIRNS holds his office is 2689, R. S. 1919, and is:

"COUNTY COURT MAY APPOINT ADDITIONAL JUSTICES, WHEN,—

"Whenever a petition shall be presented to the county court of any county in this State, signed by twelve or more qualified voters of any township in said county, setting forth that they live more than five miles·from the nearest justice of the peace·in their township, the county court shall have power to appoint an additional justice of the peace for such township, and the justice so appointed shall live in the immediate neighborhood of the petitioners, and at least five miles from any other justice of the peace of such township: Provided, that the county court shall not appoint more than two additional justices in any township, except if it be shown to' the county court that there is no justice of the peace living in any incorporated or unincorporated town or village having a population of at least two hundred inhabitants, then the county court, at the request of any twelve resident householders

in said town or village, may appoint one justice in said town or village in addition to the number of justices hereinbefore specified. The term of office of a justice of the peace appointed under this section shall expire on the general election day in the year when justices of the peace shall be elected for the townships, as provided by law."

It is evident this section was passed for the convenience of those who live in the immediate neighborhood, and at least five miles from any other justice of the peace. The justice courts have always been known as "the poor man's court." The Legislature evidently had that in mind when it provided for districts and the appointment of justices of the peace by the county court. Would this theory be carried out if a justice could hold his court in any other district than the one for which he was appointed? We think not. If the respondent's theory is correct, all the justices in the township could congregate, for the purpose of holding court, in one building within the township and in this way the very underlying purpose of the act of the Legislature be thus defeated.

The Supreme Court in the case of State ex rel. v. Pollock, 276 S. W. 20, in passing upon the constitutionality of section 2726A, discussed section 2689, and construed said section to the effect that the justices appointed under this section were "local" and "not wandering;" that their appointment was a matter of necessity, which was a fact to be found by the county court. Could this reasoning lead to any other conclusion but that the justice appointed, by reason of necessity, or for convenience of the people, must hold this court within the district in which he was appointed? The Supreme Court in State ex rel. v. Pollock, supra, said:

"This Act of 1925 says to the party (whether the State or a private individual), if you want to sue a resident of Kaw township on a note or an account, you must leave the justice of the vicinity (who was appointed because of necessity), and travel over five miles to a salaried justice of the peace. But, if you want to sue a person on a similar cause of action who chances to be in Kaw Township, then you can use your local justice. Are the rights of litigants to their local court to be frittered away upon such a flimsy basis for a classification?"

We hold, therefore, that Justice CAIRNS was holding his court outside of his jurisdiction at the time this case was tried.

The second question then arises, were his acts legal when he was holding his court outside of his district?

There is no case in Missouri discussing this question but outside the State we find the following:

Kelley's Justice Treatise, sec. 5, page 7, says:

"A justice elected for one district or township has no right or authority to establish his office and exercise his official functions within the limits of another district or township."

In Johnson v. Hunter, 50 W. Va. 52, the Supreme Court had the same question before it and said, 1. c. 58:

"The Constitution requires him to reside in his district, and, no place being designated at which he shall hold his court, as in the case of a circuit judge, the presumption is that one reason for this requirement is to secure the holding of such courts in all the districts of the county, and, as said by Judge McWHORTER, to bring justice to the doors of the people, that they may not, without good reason, be compelled to go to a remote part of the county to defend their rights in suits that may be brought against them."

Again, 1. c. 58-59:

"If a justice after election and qualification, were permitted to reside out of his district, it might result in the removal of all of them to a city or place of heavy population in some one portion of the county, and thus compel all persons residing in certain districts of the county to go many miles at considerable expense, and at great inconvenience to institute such actions as they may desire to bring. Such a condition of things would deprive the citizens of some or most of the districts of the presence of a justice among them to take acknowledgments of deeds and perform other official duties necessary to the transaction of business."

And again, 1. c. 59:

"It is representative to the extent that each locality in the county may have some person of their own choice to act in that capacity; but it is further required that he shall actually reside and be among them where ordinarily he would be expected to transact and perform his official duties and keep his court open for the transaction of their business. . . . He is a justice of the peace having jurisdiction of the class of cases to which the one in question belongs; but he has no jurisdiction of that particular case, because it was not instituted before him and is not to be tried by him at a place in which he has the right, generally, to try any civil case. Moreover, in attempting to exercise his powers in a district other than the one for which he was elected, he is abusing the judicial power and jurisdiction vested in him by law. He is calling upon suitors to attend before him at a place to which he has no right nor power to require them to come, and is attempting to compel them to do so by process of the law."

The Supreme Court of Kansas in Philips v. Thralls, 26 Kansas, 780, upon a similar question said:

"One purpose contemplated in the organization of these courts was to have neighborhood courts, convenient to every individual for the settlement of minor disputes. If one justice may move his court out of his township to any other place in the county, all may; and we may have the spectacle of all the justices of all the townships in a county congregating in the county seat, and holding office there. Thus would one of the beneficent purposes of these inferior courts be defeated."

The Supreme Court of the State of Kentucky, in the case of Wheeler v. Schulman, 176 S. W. 1017, in deciding that a justice had a right, by injunction, to prevent any justice from holding court in his district, said, l. c. 1019:

"Manifestly, if one justice of the peace may maintain a court within a district for which he was not elected, every other justice in the county could do likewise, and the anomalous situation would be presented, of eight justices' courts, in full operation in one district of the county, while the other districts of the county would substantially be left barren of whatever benefits such courts may bestow."

This case rests upon the authority of Venhoff & Co. v. Morgan, 11 Ky. Law Rep., 276, in which latter case it was said,

"He, the justice, becomes a judge when he is appointed or elected, but he becomes a court only when, at the time and place designated by law, he performs judicial duties."

In Foster v. McAdams, 9 Tex. Rep. 542, a like question was presented, and it was held that even by consent of the parties the justice cannot render a valid judgment outside of his district.

In Nelson Clements v. The City of San Antonio, 34 Tex. Rep. 25, the case of Foster v. McAdams, supra, is followed, and the court said:

"The justice of the peace elected for one precinct has no right or authority to establish his office and exercise his official functions within the limits of another precinct; and if he should attempt to do so, his acts would be void."

The same question was before the Supreme Court of Georgia, in Block v. Henderson, 82 Ga. Rep. 23. The syllabus, which is well written says:

"When a justice of the peace went outside the limits of his district and undertook to hold his court, he had jurisdiction neither of the subject-matter nor of the person, and no waiver or agreement made before him outside of his jurisdiction could confer jurisdiction upon him."

In Hart v. Grove, 76 Okla. 179, the court, in discussing the act of a justice of the peace outside of the State, said, l. c. 180:

"He (meaning the justice) can perform his official acts only in his own township."

It is argued that a justice has jurisdiction in replevin suits co-extensive with the county. However, the court can act only in accordance with the law. The justice court and every other court, acts through the justice or the judge. Outside of court the justice or the judge is but a man, and outside of the district for which he was appointed or elected, his judgments have no more force than if rendered by a mere by-stander. Justice CAIRNS was appointed, as an instrument of the law, to hold his court within certain territorial limits and when he leaves those limits he leaves behind him his judicial character.

Some questions are raised by the respondent as to entry of appearance by taking an appeal, but under our view, these questions are not important.

Respondent cites cases where it is held that by consent or convenience of the parties, a justice may hold his court outside his district. [Rogers v. Davis, 184 S. W. 151; Jones v. Church of Holy Trinity, 17 N. W. 362; Holmes v. Igo et al., 124 N. W. 974; Rogers v. Loop, 50 N. W. 224.]

However, we think that under the reasoning in State ex rel. v. Pollock, supra, of the Supreme Court, the evident purpose of our Legislature and the great weight of authority, Justice CAIRNS was without jurisdiction of the subject-matter when he attempted to hold court out of his own district.

The judgment is reversed with directions to the circuit court to sustain the plea to the jurisdiction. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.