**LA JUNTA PRODUCTION CREDIT ASSOCIATION, Plaintiff–Appellant,**

**v.**

**Derral SCHRODER and Gladys Schroder, Defendants–Appellees,**

**and**

**Eugene Schroder, Intervenor–Appellee.**

**No. 89CA1799.**

Colorado Court of Appeals,
Div. III.

Oct. 11, 1990.

Rider & Woulf, P.C., Jeffrey O. McAnallen, Colorado Springs, for plaintiff-appellant.

Derral Schroder and Gladys Schroder, pro se.

Johnson & McLachlan, George McLachlan, Lamar, for intervenor-appellee.

Opinion by Judge DUBOFSKY.

Plaintiff, La Junta Production Credit Association, appeals the judgment entered in favor of intervenor, Eugene Schroder, for $17,608.80, plus interest and costs. We affirm.

In 1984, defendants, Derral and Gladys Schroder, executed a promissory note payable to plaintiff and also executed a document that gave plaintiff a security interest in certain personal property, including cattle, owned by defendants.

On January 4, 1986, defendants delivered 30 head of cattle to their son, Eugene Schroder, intervenor, who is a licensed veterinarian. Because defendants had lost their ranch by foreclosure, intervenor was to care for the cattle until defendants could place them elsewhere. No written contract covering this agistment agreement was ever executed, and the price agreed to by intervenor and defendants was disputed.

In March 1986, plaintiff filed an action against defendants to foreclose on the security interest. The trial court granted plaintiff's motion for summary judgment and awarded it $93,179.31 in damages plus costs. The court subsequently entered a decree of foreclosure and sale.

On January 16, 1989, intervenor recorded an agistor's lien at the county courthouse for the costs of feeding the cattle. He returned home to find the Baca County Sheriff and plaintiff's representatives levying on the writ of execution. Intervenor then personally served the sheriff and plaintiff with copies of the agistor's lien. The sheriff took possession of the animals.

On March 8, 1989, the cattle were sold, netting proceeds of $32,770.22. The following day, intervenor filed a motion to intervene in plaintiff's pending case against defendants and a complaint containing a claim for relief based upon an agistor's lien.

The trial court permitted the intervention and then determined that intervenor had an agistor's lien on the cattle, which applied to the proceeds from their sale. The trial court also concluded that the agistor's lien was superior to all other liens and security interests on the cattle and the proceeds thereof. Consequently, it ordered that intervenor be paid $17,608.80 from the sale proceeds.

I.

Plaintiff first argues that intervenor did not meet the requirements for asserting an agistor's lien because there was no contract of agistment between intervenor and defendants. In particular, plaintiff contends that there was no meeting of the minds as to the price. We disagree.

An agistor's lien for the feeding and pasturing of livestock did not exist at common law and is thus entirely a creature of statute. *Auld v. Travis*, 5 Colo.App. 535, 39 P. 357 (1895).

Section 38–20–102(1)(a), C.R.S. (1982 Repl.Vol. 16A) provides, in pertinent part:

"Any ... agistor ... veterinarian, or other person to whom ... cattle ... are entrusted for the purpose of feeding ... keeping ... or medical care shall have a lien, which shall be superior to all other liens, upon such ... cattle ... for the amount that may be due for such [services] and for all costs incurred in enforcing such lien."

■ The lien attaches only when: (1) there is a contract, express or implied, between the agistor and the owner of the livestock, *Ellison v. Tuckerman*, 24 Colo. App. 322, 134 P. 163 (1913); (2) the agistor has exclusive possession of the livestock, *McKee Livestock Co. v. Menzel*, 70 Colo. 308, 201 P. 52 (1921); and (3) the agistor does not have an ownership interest in the livestock. *Auld v. Travis, supra.*

Here, the trial court found the agistor's lien had attached. It found that there was an agreement between defendants and intervenor as to the care and keeping of the cattle for the fee of $14 per head per month, that intervenor had exclusive possession of the cattle, and that the cattle were owned by the defendants.

■ Although there was disagreement between intervenor and defendants as to the exact price intervenor was to be paid for the cattle, the trial court determined the $14 per head per month was the most credible figure. That finding has support in the record and it will not be disturbed on appeal. *See People in Interest of A.J.*, 757 P.2d 1165 (Colo.App.1988).

## II.

■ Plaintiff also argues that, even if intervenor had an agistor's lien on the cattle, he waived it by releasing the cattle to the sheriff. We disagree.

"Waiver is the intentional relinquishment of a known right or privilege.... A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege; or it may be implied, as, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion.... Al-

though an intent to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit."

*Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984).

■ An agistor who "voluntarily" releases cattle, either to the owner or other parties, waives his lien. *Hoy v. Griffin*, 137 Kan. 872, 22 P.2d 449 (1933). Also, if an agistor surrenders animals to a mortgagee without making an attempt to preserve his lien, the lien is lost. *Hill v. Rhule*, 71 Colo. 140, 204 P. 894 (1922). However, if possession is obtained by the owner or another party by clandestine means or false promises, the surrender of the cattle is not voluntary and the lien remains. *Gould v. Hill*, 43 Idaho 93, 251 P. 167 (1926); *Sample v. Verner–Kelly Livestock Commission Co.*, 193 Mo.App. 670, 186 S.W. 1125 (1916).

Here, intervenor released the cattle to the sheriff because of the sheriff's right to them under the writ of execution. The sheriff testified that he would have used force, if necessary, to take possession of the animals.

The trial court found that intervenor did not voluntarily relinquish the agistor's lien through conduct that clearly manifested an intention not to assert the lien. *See Department of Health v. Donahue, supra.* Thus, it found that no waiver had occurred. We agree that intervenor's release of the cattle to the sheriff pursuant to legal process was not a waiver of the agistor's lien. The acquiescence in the seizure of the cattle by the sheriff is not the type of voluntary act that is required before an agistor's lien is lost. *See Howard v. Mortensen*, 144 Wash. 661, 258 P. 853 (1927) (no waiver of lien where agistor surrendered cattle to sheriff executing a levy to satisfy judgment against owner).

## III.

■ Plaintiff's next contention is that the agistor's lien, if it existed, was terminated because intervenor failed to comply with the requirements of § 38–20–107,

C.R.S. (1990 Cum.Supp. 16A) and § 38–20–108, C.R.S. (1982 Repl.Vol. 16A). We disagree.

Section 38–20–107 provides that an agistor's lien terminates if the lienholder does not foreclose the lien by commencing a judicial action within 60 days after the charges become due and payable.

Here, in explaining why an earlier demand was not made, intervenor testified, without contradiction, that the charges were not due and payable until the ownership of the cattle was determined. For this purpose, the bank's right to possession and sale was determined on January 16, 1989, when the sheriff removed the animals from intervenor's property. In as much as intervenor's complaint was filed on March 9, 1989, he complied with the 60–day filing requirement of § 38–20–107.

 Section 38–20–108(1), C.R.S. (1982 Repl.Vol. 16A) provides that, in an agistor's lien foreclosure action, "the lienholder or his attorney, by complaint," shall show to the court the following:

"(a) That the lienholder did perform a specified service for the defendant which entitles him to a lien on personal property owned by the defendant pursuant to the provisions of section 38–20–102 ...;

"(b) That said service was performed at the request of the defendant or his agent;

"(c) A particular description of the property upon which the lien is claimed and a statement of its actual value;

"(d) That the defendant has failed to pay charges within thirty days after the same became due and payable; [and]

"(e) That notice of demand for charges has been given to the owner personally or by registered mail at the owner's last known address. . . ."

Here, intervenor's complaint complies with the listed requirements except as to notice. The complaint does not mention a notice of demand at all. However, the evidence at trial proved that a demand for payment in the form of an agistor's lien, dated January 16, 1989, was personally served on the sheriff and plaintiff on the day the cattle were levied on.

The trial court found that intervenor had complied with the requirements of § 38–20–107. However, it did not expressly state whether intervenor was required to comply with § 38–20–108. It simply held that intervenor's actions in filing and pursuing the case were sufficient to meet his statutory obligations.

We agree with plaintiff that intervenor should have pleaded the matters set forth in § 38–20–107; however, under the circumstances presented here, the failure to do so is not fatal to intervenor's claim.

The evidence at trial proved that intervenor had made the requisite demand on plaintiff. Furthermore, we note that plaintiff did not file a pleading affirmatively raising this issue and raised it for the first time orally on the day of trial. Had the issue been raised as part of an affirmative pleading, then intervenor could have amended his complaint to meet the allegation. Under such circumstances, we conclude that intervenor's complaint, coupled with the evidence introduced at trial, was sufficient to meet the requirements of §§ 38–20–107 and 38–20–108.

## IV.

### A.

 Plaintiff finally argues that if intervenor did have a lien, it did not attach to the sale proceeds in superiority to plaintiff's security interest in those proceeds. Plaintiff argues that § 38–20–102(1)(b), C.R.S. (1982 Repl.Vol. 16A) provides the exclusive means by which an agistor can claim the proceeds of a sale and that since intervenor did not meet such requirements, he does not possess a lien on the proceeds. We note there is no evidence in the record that the cattle were sold for slaughter or packinghouse purposes, and therefore, we assume that § 38–20–102(1)(b) is inapplicable. However, we agree with intervenor's position that § 38–20–102(1)(b) does not provide the exclusive means by which an agistor can claim the proceeds of a sale.

■ Before a statutory lien is given priority over another pre-existing lien, mortgage, or perfected security interest, the statute must indicate a specific legislative intent to give such a priority. *ITT Diversified Credit Corp. v. Couch*, 669 P.2d 1355 (Colo.1983). The priority of a statutory lien vis-a-vis the holder of a security interest depends on the priority accorded each lien. *ITT Diversified Credit Corp. v. Couch, supra.*

■ Section 38–20–102(1)(a), C.R.S. (1982 Repl.Vol. 16A) expressly grants an agistor a lien which is "superior to all other liens." *See also In re Windrush Associates II*, 105 B.R. 195 (Bankr.Conn.1989) (agistor's liens are granted priority over any liens placed on the animals). Therefore, an agistor's lien creates a priority status which defeats the rights and claims of a perfected security interest. *See also Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 580 P.2d 1251 (1978).

■ Since the agistor's lien is created by statute, it is not governed by the Uniform Commercial Code. *See* § 4–9–104(c), C.R.S. (U.C.C. recognizes that express statutory liens have a priority over security interests); *see Board of County Commissioners v. Berkeley Village, supra* (attorneys' lien created by statute not governed by U.C.C.).

Here, intervenor perfected his lien by recording it in the county and serving a copy of it on plaintiff. Therefore, under § 38–20–102(1)(a) the perfected lien has priority over plaintiff's perfected security interest.

■ Under § 38–20–102(1)(b), C.R.S. (1982 Repl.Vol. 16A) the filing of an agistor's contract with the county gives constructive notice of a lien on the livestock. The agistor is entitled to the proceeds of the sale of the livestock regardless of whether the person taking or selling the livestock or possessing the proceeds from the sale had actual prior knowledge of the agistor's lien.

Here, however, plaintiff had actual knowledge of a superior lien on the cattle while they were still in intervenor's possession. Furthermore, for the reasons previously stated, the lien was not discharged by the involuntary loss of possession of the cattle to the sheriff because of the plaintiff's levy and subsequent foreclosure sale. Under these circumstances, to permit the plaintiff to negate the agistor's priority lien would defeat the purpose of § 38–20–102(1) which is to give an agistor a priority lien for feeding and caring for livestock.

Accordingly, we conclude that § 38–20–102(1)(b) is not the exclusive means by which an agistor's lien may be asserted against the proceeds from the sale of cattle.

### B.

■ The plaintiff next argues that even if the agistor's lien was valid while the sheriff possessed the cattle, since the sale of the cattle to a third party was prior to the filing of the complaint, the lien was extinguished and there is no lien on the proceeds. We disagree.

The agistor's lien attached by virtue of the contractual arrangement reached between the defendants and intervenor. The lien continued when the cattle were involuntarily seized by the sheriff from intervenor. The evidence showed the plaintiff was on notice as to the existence of the lien because of the demand notice given on January 16, 1989. Plaintiff continued the execution and forced sale of the animals with full knowledge of the lien. Intervenor asserted his claim while the proceeds were still in possession of the sheriff.

■ If a party with a lesser but secured interest in property seizes and sells the property when such party knows there is a superior claim to it, then the superior lien which had attached to the property follows the proceeds. *See Chatfield Bank v. Energy Fuels Corp.*, 42 Colo.App. 233, 599 P.2d 923, *rev'd on other grounds sub. nom. First National Bank v. Energy Fuels Corp.*, 200 Colo. 540, 618 P.2d 1115 (1979).

■ Furthermore, when, as here, a senior lien holder with knowledge of a primary

lien holder's claim causes the foreclosure, transfer, and sale of the collateral, we hold that an equitable or constructive lien attaches to the proceeds. *See American Investors Life Insurance Co. v. Green Shield Plan, Inc.*, 145 Colo. 188, 358 P.2d 473 (1963) (contract, conduct of parties, or unjust enrichment can form equitable lien).

We thus conclude that intervenor had a lien on the proceeds of the sale of the cattle, and the trial court's judgment is affirmed.

Judge TURSI and Judge NEY concur.