[No. 3811.]

DAVIDSON ET AL. v. THE BOARD OF COUNTY COMMIS-
SIONERS OF LA PLATA COUNTY ET AL.

1. APPELLATE PRACTICE—RES JUDICATA—LAW OF THE CASE.

The doctrine of the law of the case does not apply to decisions of the
court of appeals in cases, the final determination of which may
ultimately rest with the supreme court, nor is the decision of the
court of appeals *res judicata* where the case comes before the su-
preme court on a different statement of facts than that before the
court of appeals.

2. JUDGMENTS—ATTORNEYS' LIENS—NOTICE.

Notice of an attorney's lien filed with the clerk of the court rendering
the judgment and entered on the margin of the record of the judg-
ment is not constructive notice of the lien, but where the attorney
of the assignee of the judgment, acting for the assignee in the
matter of the assignment, read the notice before the assignment
was made it constituted actual notice to the assignee.

3. JUDGMENTS—ATTORNEYS' LIENS.

Where a judgment is procured for and in the name of one party but
another party is the real owner of the judgment, an attorney's lien
may be enforced directly against the real owner.

4. JUDGMENTS—ATTORNEYS' LIENS—NOTICE—PARTIES.

Where a judgment was assigned and paid to the assignee and the as-
signee had notice of an attorney's lien before the assignment, and the
judgment debtor had notice of the lien before paying it, both the
assignee and the judgment debtor were liable to the attorneys for
their fee and the attorneys might elect to bring their action against
either or both.

*Error to the County Court of La Plata County.*

Mr. N. C. MILLER, for plaintiffs in error.

Mr. WILLIS A. REESE and Mr. O. S. GALBREATH, for
defendants in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the
court.

This is an action to enforce an attorney's lien upon a judgment. On April 11, 1892, in the district court of La Plata county, M. R. Shields, as plaintiff, recovered a judgment against the board of county commissioners of La Plata county for $5,266.38. The plaintiffs here were the attorneys for Shields in that action, and it is for the fees earned by them in prosecuting the same that the attorney's lien is claimed. On the 12th of May of the same year they filed in the office of the clerk of the district court a notice of their claim of lien, and on the next day caused to be entered in the margin of the record of the judgment a notice of their intention to rely on the same. Afterwards, and on the same day, Shields, the judgment debtor, by a writing in the same margin, assigned the judgment as collateral security, to the Colorado State Bank of Durango for a debt he owed it, and the attorney of the bank, who acted for it in taking the assignment, read this notice of plaintiffs before the assignment was made. On the 26th of that month plaintiffs filed with the county clerk of the county a notice addressed to the board of county commissioners in which they claimed a lien upon the judgment for their services, and admonished the board to reserve the amount of their fee, $1,025, from any settlement it might make of such judgment, otherwise the board would be held liable therefor. In October, 1892, the county delivered to the bank, in satisfaction of the judgment, certain of its bonds which were sold by the bank, which applied the proceeds on Shields's indebtedness.

On the 14th of February, 1893, the plaintiffs brought an action in the county court of La Plata county to enforce their lien, naming as defendants M. R. Shields and the Colorado State Bank of Durango. Judgment went against plaintiffs, and they appealed to the district court of the same county where, after filing an amended complaint naming as defendants M. R. Shields, who was not served with process, the board of county commissioners of La Plata county, which appeared but filed no answer, and the Colorado State Bank of Durango, which filed an answer, a trial was had on the issues joined

1899.]     DAVIDSON v. LA PLATA COUNTY.     551

under the amended complaint and this answer resulting in a decree in favor of the plaintiffs, adjudging the amount of their claim a lien upon the judgment, and ordering the bank to account for and pay the same to the plaintiffs.

The bank appealed to the court of appeals, and the judgment was reversed, the opinion of the court appearing in 7 Colo. Appeals, 91. The opinion discloses that in the judgment of that tribunal, there was no evidence that the board of commissioners received any notice, or had any knowledge, of the plaintiffs' intention to resort to the judgment for a satisfaction of the lien, until service of summons upon them; and it further appeared from the evidence that the bank took its assignment of the judgment without any notice or knowledge of the plaintiffs' claim, and that the board paid to the bank the amount of the judgment in good faith and in ignorance of plaintiffs' claim. Plaintiffs, therefore, according to the opinion, having lost their lien against the judgment debtor, the county, and their lien being subordinate to that of the bank, the decree was reversed.

The court, as a matter of law, however, held that, if there was a surplus of the judgment after the bank's claim was liquidated, plaintiffs might have a lien thereupon; but as Shields was not served with process, and did not voluntarily appear, no judgment was, and none could have been, rendered against him upon which the bank's liability depended, but, which, in any event, would not attach unless the amount of plaintiffs' lien was first established against Shields. The case was, therefore, remanded with leave to the plaintiffs to amend their complaint to make Shields a party.

After the cause was remanded to the district court, the plaintiffs, instead of amending as suggested, dismissed the action without prejudice, then, after first establishing the amount of their claim as a judgment against the estate of Shields (Shields in the mean time having died), brought this action in the county court of La Plata county making the board of county commissioners the sole defendant.

Afterwards, in pursuance of rulings so requiring, the

plaintiffs filed an amended complaint making the bank and the personal representatives of M. R. Shields codefendants with the board. The representatives of Shields disclaimed any interest in the controversy, and answers were filed by the bank and the board. The answer of the bank contained a general denial and, as a separate defense, a plea of a judgment in its favor by the court of appeals.

Trial was had to the court without a jury, and judgment was rendered dismissing the action, to reverse which plaintiffs have sued out this writ of error.

We do not discuss in detail all of the questions raised, but shall determine the rights of plaintiffs both against the county and the bank, for we are clear that the judgment should be reversed and a new trial had.

This action is not barred by the statute of limitations pleaded by the board; plaintiffs have not been guilty of laches in enforcing their claim, and they are not estopped by any act or conduct to maintain the action.

The decision of the court of appeals is not *res adjudicata.* It has been held by this court in the case of *Brown v. Tourtelotte,* 24 Colo. 204, that the doctrine of the law of the case does not apply to decisions of the court of appeals in cases where their final determination may ultimately rest with the supreme court. This sufficiently disposes of the claim in that behalf made by the defendant in error.

But there is an additional reason, if the doctrine were applicable at all, why it should not be applied here, consisting of the fact that the evidence before the court of appeals was not the same as that in the record before us. That this is so seems clear from a statement by the writer of the opinion in that case when he said that there was no evidence in the record that the board of commissioners had any notice or knowledge of plaintiffs' intention to rely upon their lien, or that the bank took the assignment of the judgment knowing of plaintiffs' claim, whereas in the record before us it conclusively appears that before the judgment debtor paid the bank the amount of the judgment, it had actual notice

that the plaintiffs intended to resort thereto for the enforcement of their lien, and that the bank, through its attorney, also knew of plaintiffs' intention before the judgment was assigned. It is true that neither the filing by the attorneys with the clerk of the district court, nor their entry in the margin of the judgment record, of a statement that they claimed a lien for their fees was constructive notice to any one, for there is no statute providing for either act. That fact, however, is not decisive, for the attorney for the bank, who, in the light of the record, is its representative, read this entry in the margin before the judgment was acquired, and so the bank had actual notice of plaintiffs' intention to enforce their lien.

The filing of the notice with the county clerk, he being *ex officio* clerk of the board of commissioners, we are inclined to think was, of itself, sufficient to charge the judgment debtor with notice, as he was for this purpose the agent of the board; but it is not necessary so to decide because two of its members testify that before settlement was had with the bank as the assignee of the judgment, this notice, at its regular July meeting, was either read to them by the clerk, or they read it themselves, and so the board had actual notice and was explicitly advised of plaintiffs' intentions, but, notwithstanding this fact, and acting upon the advice of the county attorney, they chose to disregard it and paid the judgment.

That the county board, as the judgment debtor, is liable to the plaintiffs, we have no doubt; and that the fruits of the judgment, still in the possession of the bank, are subject to plaintiffs' lien is just as evident. In *Frink v. McComb*, 60 Fed. Rep. 486, Dallas, circuit judge, after a review of the authorities, thus states the law: " Taken together, they clearly establish that the right of counsel to which we have referred " (the right to resort to a judgment recovered as the result of their professional services) " cannot be extinguished by assignment of the judgment or decree made without their acquiescence."

Wales, district judge, speaking to the same point, says: " The counsel for the assignees contended that they were in the position of purchasers for a valuable consideration, without notice of the attorney's lien.    But this does not satisfactorily appear.    When they took the assignments they knew that the estate of C. B. Snyder was insolvent, and that Mr. Frink individually " (they being the judgment creditors), " was unable to pay counsel fees, and they were thus put on inquiry as to the claims of the solicitors, of whose connection with the cause they had been informed by Mr. Frink, and at least had reason to suspect that there was no other source for the payment of those fees than a portion of the proceeds of the decree.    But the want of actual notice to the assignees, as is conclusively demonstrated in the opinion of Judge Dallas, would not enable them to take precedence of the attorney's lien."

The facts in the case at bar are that Shields, the judgment creditor, was insolvent at the time of the recovery of the judgment and when it was transferred.    The assignees knew this fact.    They knew that the plaintiffs, as Shields's attorneys, had no other way to make their fees except out of the proceeds of the judgment, and knew of their intention to do so. Indeed, the bank was the real owner of the judgment when it was rendered, and plaintiffs might have proceeded against that institution directly as the judgment creditor for the purpose of enforcing their lien.    The case is a much stronger one, in behalf of plaintiffs, than was the case for the attorneys in *Frink v. McComb, supra.*

Possibly the court there went further than our decisions permit, but in the case at bar it is not necessary for us to go to that extent.    In *Fillmore v. Wells*, 10 Colo. 228, this court, on page 235 of the opinion, speaking by Helm, J., said: " If the attorney neglects to proceed to the enforcement of his lien until the debtor has in good faith discharged his liability under the judgment, or a third person has in good faith, and for valuable consideration, purchased the fruits thereof, he should be held to have waived the right to look to the debtor,

on one hand, or to such fruits, on the other, for his compensation. That is to say, if, without notice that the attorney intends to enforce his lien, the judgment debtor make a *bona fide* settlement of the judgment, or an innocent third person purchase the property, the statutory right is. lost."

The converse of this must be true, viz., that if the attorneys' conduct is not such as to constitute laches, or a waiver, or operate as an estoppel, and if, with notice that he intends to enforce his lien, the judgment debtor make a settlement of the judgment, or if one purchase the property with full notice of the attorney's intention, the statutory lien is not lost. That is exactly the situation here. The lien was not lost by the attorneys' conduct. The board of county commissioners had notice that the plaintiffs intended to enforce their lien. The bank, the assignee of the judgment, also had full knowledge before it took the assignment.

The decision of the court of appeals on the former review is not conclusive upon this court upon this hearing. Moreover, that tribunal, in remanding the case to the district court, not having limited the parties to any particular issue, must have intended that the cause should be tried *de novo* in all its aspects. We are satisfied that there is nothing in its decision, and we find nothing in the opinion, which can be regarded as a final adjudication of the rights either of the bank or of the county, or that any such result was intended.

Neither in the cause which was decided by the court of appeals, nor in the action which we are now reviewing, has there been an election by the plaintiffs to pursue the remedy against the county to the exclusion of that against the bank, or against the bank to the exclusion of that against the county. In each action both the bank and the board of county commissioners were parties defendant.

Our conclusion is that, under the undisputed facts disclosed by this record, both the board of county commissioners and the bank are liable to the plaintiffs, and in the event of a new trial plaintiffs may elect as to whether they shall seek a single satisfaction of both, or one, and if so, which one of said defendants.

The judgment of the county court is reversed, and the cause remanded with instructions to proceed in accordance with the views announced in the opinion.

*Reversed.*