580 P.2d 1251 (1978)
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, State of Colorado, and the State Department of Highways, Division of Highways, State of Colorado, Petitioners,
v.
BERKELEY VILLAGE, a co-partnership, and Allen R. McKnight, as Treasurer of Adams County, Respondents, and
United Bank of Denver National Association and USLife Life Insurance Company of Texas, Intervenors-Appellants, and
Advance Mortgage Corporation and Clark, Martin and Pringle.
No. 76-747.
Colorado Court of Appeals, Division II.
March 9, 1978.
Rehearings Denied April 13, 1978.
Certiorari Denied July 3, 1978.
*1252 Holme, Roberts & Owen, Joseph E. Meyer, III, Jo Ann Soker, Denver, for intervenors-appellants United Bank of Denver National Ass'n.
*1253 Law, Nagel & Clark, P. C., William G. Horlbeck, Denver, for intervenors-appellants USLife Life Ins. Co. of Texas.
Hellerstein, Hellerstein & Shore, P. C., Stephen A. Hellerstein, Brad L. Doores, Denver, for intervenors-appellants Advance Mortg. Corp.
Clark, Martin & Pringle, Bruce D. Pringle, Denver, for intervenor-appellee Clark, Martin and Pringle.
SILVERSTEIN, Chief Judge.
This is an appeal from a judgment which determined the rights of various claimants to the proceeds of a condemnation proceeding brought by the Board of County Commissioners of Adams County and the Colorado State Department of Highways against Berkeley Village, Inc., a Colorado corporation, and Berkeley Village, a co-partnership. The parties to this appeal are intervenors in the eminent domain action who claimed an interest in the condemnation award. The trial court determined the priorities of the claimants to be: (1) Clark, Martin & Pringle (CM&P), (2) USLife Life Insurance Company of Texas (USLife), (3) Advance Mortgage Corporation (Advance), and (4) United Bank of Denver National Association (United). We affirm as to the priority of CM&P, and reverse as to the other priorities.
The facts pertinent to this appeal are: Mr. Paul Fregolle and Mr. Robert Jump executed a partnership agreement in May 1952 which stated the name of the partnership to be Berkeley Village Mobile Manor. On June 12, 1973, they executed an amendment to the partnership agreement which stated, "The trade name has been Berkeley Village Mobile Manor and Berkeley Village and from and after June 12, 1973, shall be Berkeley Village West Mobile Manor." The agreements were recorded with the Adams County Clerk and Recorder. No trade name affidavits were ever filed by the partnership.
On October 20, 1972, title to the condemned property was conveyed by Berkeley Village, Inc., a corporation wholly owned by Fregolle and Jump, to "Berkeley Village, a co-partnership." On January 12, 1973, the condemnation petition was filed, together with a stipulation to deposit $865,000, with the right of the landowner to withdraw up to $795,000. On March 27, 1973, $784,135 was withdrawn, part of which was disbursed to third persons in order to release claims then existing against the title to the condemned land.
On September 26, 1975, an order was entered which determined the total amount to be paid for the land was $1,015,000, and that an additional amount of $150,000 had been deposited with the court. Between January 12, 1973, and September 26, 1975, the following events took place.

Clark, Martin & Pringle Claim
On February 16, 1973, the law firm of Berge, Clark & Martin, predecessor to Clark, Martin & Pringle, entered its appearance in the condemnation proceedings on behalf of Berkeley Village, Inc., and Berkeley Village, a co-partnership, pursuant to an agreement entered in January 1973. That agreement provided that the law firm was to receive one-third of the difference between the condemnation amount already deposited and the amount ultimately awarded. The law firm continued its representation throughout the remainder of the condemnation proceedings.
On November 25, 1975, CM&P filed a notice of attorney's lien, and on December 15, 1975, filed its claim for $54,276.82, asserting a lien priority date of not later than its entry of appearance. By stipulation of the parties, the "validity and reasonableness" of the claim was agreed to, "the only issue in dispute on said claim being that of priority." The trial court awarded CM&P first priority.
(Hereafter, the respondent Berkeley Village a co-partnership, will be referred to as the "Partnership," except where the specific name used has a material significance).

The USLife Claim
The condemned land was part of a larger parcel owned by the Partnership which, in *1254 1972, was being developed as a mobile home park. Temporary financing had been obtained for the project, and USLife and an affiliate had agreed to provide the permanent financing. The temporary loan was secured by a deed of trust on all the property. The condemnation reduced the value of the security, which was also to secure the permanent loan. In order to make up the difference and preserve the permanent financing, on March 27, 1973, the Partnership assigned all of its title and interest in the condemnation award up to $80,000, to whoever the holder of the trust deed would be at the time the final award was made. The Partnership retained the right to the interest earned by the $80,000. This assignment was discharged on March 5, 1974.
The consideration for this discharge was the execution of a second assignment by the Partnership of the $80,000. This assignment to USLife was executed on June 20, 1974, and on the same date the Partnership executed a deed of trust to USLife and an affiliate, to the uncondemned part of the Partnership's property. The second assignment and deed of trust were recorded in Adams County in June 1974.
At the hearing on the claims, USLife stated it was relying on the second assignment as the basis for its claim. However, the trial court awarded USLife the second priority on the basis of the first assignment.

The Advance Mortgage Claim
The partners, Jump and Fregolle, were also developing a mobile home park on land owned by another partnership, Berkeley Village East Mobile Manor. Advance loaned that partnership funds for the development on July 11, 1974. By early 1975 the borrower had defaulted in its payments to Advance, and "in March or April" the parties executed an Amended Loan Agreement dated "as of January 1, 1975," wherein the borrower agreed to "cause Berkeley Village, a co-partnership and Berkeley, Inc." to assign all the amount determined to be due from the condemnation action, as additional security.
Pursuant to this agreement, the Partnership and Berkeley Village, Inc., by instrument dated "as of January 1, 1975," assigned the proceedings due or to become due from the condemnation to Advance. On July 3, 1975, Advance filed three financing statements with the Secretary of State, in which it was named as the secured party. The debtors named in the first statement were "Paul E. Fregolle and Robert G. Jump, Jr., d/b/a Berkeley Village, a Co-partnership," in the second, "Berkeley Village, a Co-Partnership," and in the third, "Berkeley Village, Inc."
The trial court, without any finding as to the exact date on which the assignment was executed, assigned the third priority to Advance.

The United Bank Claim
In 1974, United Bank had loaned the Partnership funds to finance construction of Berkeley Village Shopping Center, adjacent to the condemned land. In March 1975, additional financing was needed, and furnished by United Bank. To secure this additional financing, the Partnership executed a General Security Agreement on March 11, 1975, in which it assigned the proceeds from the condemnation action up to $479,000 to the bank.
On March 28, 1975, the bank filed a financing statement with the Secretary of State, in which the debtor named was Berkeley Village West Mobile Manor. The bank also obtained, as obtained, as additional security, a deed of trust on land owned by the Partnership.
The trial court held that, since the fund was insufficient to pay all the claims given priority over the United Bank, it was unnecessary to determine the amount or priority of the United Bank claim.

I.
The trial court based its assignment of priorities to the three security interest claimants on two conclusions, namely, that Berkeley Village and Berkeley Village West Mobile Manor were two separate partnerships, *1255 and that the Secured Transactions title of the Uniform Commercial Code, § 4-9-101 et seq., C.R.S.1973, did not apply to the assignments under which those claimants based their rights to the proceeds. We disagree with both conclusions.
The determination of the issues here is based on documentary evidence, and the interpretation thereof. Therefore, we are not bound by the trial court's findings and conclusions thereon. Meier v. Denver U. S. National Bank, 164 Colo. 25, 431 P.2d 1019 (1967); Helmericks v. Hotter, 30 Colo.App. 242, 492 P.2d 85 (1971).
The evidence is undisputed that from May 2, 1972, until June 12, 1973, the partnership operated under the trade names of Berkeley Village Mobile Manor and Berkeley Village, and thereafter under the trade name Berkeley Village West Mobile Manor. The use of these trade names was a matter of record, the partnership agreement and the two amendments having been recorded with the Adams County Clerk and Recorder. Also, the consequences of a failure to file a trade name affidavit pursuant to § 7-71-101, C.R.S.1973, are limited to the penalties contained in § 7-71-102, C.R.S.1973, and thus the absence of such affidavits here does not affect the rights of the parties, nor the right of the partnership to do business. Wallbrecht v. Blush, 43 Colo. 329, 95 P. 927 (1908).
It is clear that only one partnership was involved. Therefore, the fact that the various assignments and other documents were signed by the partners using one or the other of the trade names does not affect the validity of the documents. Nor, under the circumstances of this case, does it affect the rights of the claimants. At the time the various assignments were being negotiated, none of the assignees made any check of the files of the condemnation action, nor of any other records, but chose to rely solely on the information supplied to them by the two partners. Each of the claimants presented testimony to the effect that it knew nothing of the other assignments until after its assignment had been executed and accepted.
The trial court determined that under § 4-9-104(h), C.R.S.1973, the security interests involved here were not governed by the Uniform Commercial Code. That section provides, "This article does not apply: . . . (h) To a right represented by a judgment." However, it has been uniformly held that the proceeds of an anticipated recovery from a cause of action are "general intangibles" as defined in the Code in § 4-9-106, C.R.S.1973. That section states: "`General intangibles' means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents, and instruments." As stated in Friedman, Lobe & Block v. C.L.W. Corp., 9 Wash.App. 319, 512 P.2d 769 (1973): "The assignment of a portion of an expected recovery from a cause of action is more aptly categorized . . . as an assignment of a `general intangible'. . . ." Accord, In re Estate of Hill, 27 Or.App. 893, 557 P.2d 1367 (1976), which specifically rejected the contention that such an expectancy was "a right represented by a judgment."
In Sam v. Redevelopment Authority, 436 Pa. 524, 261 A.2d 566 (1970), it was held that an assignment of proceeds to be paid in a condemnation proceeding was governed by the Uniform Commercial Code, and therefore, was not a perfected lien, entitled to priority, until a financing statement was filed pursuant to § 9-302(1) of the UCC. The Colorado statute, § 4-9-302(1), C.R.S.1973, contains the same requirement. We conclude, therefore, that the Uniform Commercial Code controls the determination of priorities here.
The following pertinent sections of the Code dictate the order of priorities among these claimants asserting rights under assignments of the proceeds:
Section 4-9-302(1), C.R.S.1973: "A financing statement must be filed to perfect all security interests except [in certain situations not applicable here]."
Section 4-9-312(5), C.R.S.1973: "In all cases not governed by other rules stated in *1256 this section . . . priority between conflicting security interests in the same collateral shall be determined as follows: (a) In the order of filing if both are perfected by filing, regardless of which security interest attached first under § 4-9-204(1) and whether it attached before or after filing . . .."
Under these sections, the secured creditor who first perfects his security interest by properly filing a financing statement with the Secretary of State has the prior lien. See Mountain Credit v. Michiana Lumber & Supply, Inc., 31 Colo.App. 112, 498 P.2d 967 (1972). Therefore, United Bank, having filed the first financing statement, has a priority over both Advance, whose financing statement was filed later, and USLife, which never filed a financing statement.
Section 4-9-301, C.R.S.1973, provides: "(1) Except as provided in subsection (2) of this section [not applicable here], an unperfected security interest is subordinate to the rights of: (a) Persons entitled to priority under Section 4-9-312 . . . ." Since USLife had only an unperfected security interest, its rights are subordinate to those of United Bank and Advance, whose interests were perfected by filing.
Advance claims United Bank's financial statement is defective because it does not list the partners as debtors, but only sets forth the partnership name. It asserts this violates § 4-1-203, C.R.S.1973, which provides that every duty within the Uniform Commercial Code "imposes an obligation of good faith in its performance." We find no merit in this argument. The financing statement was signed by both partners and bore the correct name of the partnership. Had Advance made a search of the records, it would have become apprised of the United Bank claim.
Likewise, we find no merit in USLife's claim that its assignment was not a security interest, but a sale. Neither the testimony nor the documentary evidence supports this theory. Further, the recording of the assignment with the Clerk and Recorder did not perfect its lien. Mountain Credit, supra.
We conclude that, as between the assignee claimants, United Bank has the first priority, as of March 28,1975, that Advance has the second priority, as of July 3, 1975, and that USLife has the subordinate priority.

II.
We agree with the trial court that the attorney's lien claimed by CM&P is entitled to priority over the other claimants. Since, according to § 4-9-104(c), C.R.S.1973, the secured transactions article of the Uniform Commercial Code does not apply "[t]o a lien given by statute or other rule of law for services," the attorney's lien here, in contrast to the other security interests, is not governed by the UCC.
CM&P claims the attorney's lien under § 12-5-119, C.R.S.1973, which provides that all attorneys shall have a lien "on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit, for any fees or balance of fees, due or to become due from any client." The statute further provides:
"[I]n the case of judgments obtained in whole . . . by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor. . . which notice, duly entered of record, shall be notice to all persons and to all parties, including . . . all persons claiming by, through, or under any person having obtained a judgment that the attorney . . . has a first lien . . . on such judgment for the amount of his fees."
The trial court awarded CM&P the first priority on the ground that United Bank, the only claimant contesting the priority of the lien, was not a good faith purchaser for value because, among other reasons, the Bank was on notice to inquire as to the attorneys' reliance on the lien. We agree.
*1257 United Bank concedes that the lien is created automatically by the statute upon the commencement of services by the attorney. Dankwardt v. Kermode, 68 Colo. 225, 187 P. 519 (1920). And our Supreme Court has held that the lien "attaches immediately upon the obtainment of a judgment." People ex rel. MacFarlane v. Harthun, Colo., 581 P.2d 716 (1978). However, United contends that its lien has priority over CM&P's lien because CM&P's notice of intent to enforce the lien was not filed in the record of the action until November 25, 1975. It relies on Collins v. Thuringer, 92 Colo. 433, 21 P.2d 709 (1933), which holds that the provision concerning notice "is intended to give constructive notice, so as to preserve the attorney's lien in the event that . . . some third person, without having . . . actual notice, should acquire an interest in the judgment or in its proceeds." However, that case further holds that a third person who is not a good faith purchaser or assignee, even though without notice, takes subject to the lien. In Clark v. O'Donnell, 68 Colo. 279, 187 P. 534 (1920), the court held, "The principal purpose of the statute, as to notice, is to protect innocent purchasers of the fruits of the judgment." (emphasis added)
At the time United Bank took its assignment it knew that the partnership was in substantial financial difficulty, and that the partnership was represented by a firm of attorneys in the condemnation proceedings. A majority of the jurisdictions ruling on this issue have held that under these circumstances, an assignee is under a duty to inquire as to the status of the attorney's lien, and that if he fails to do so, he takes subject to the lien. See, e. g., Heartt v. Chipman, 2 Aikens (Vt.) 162 (1827); Renick v. Ludington, 16 W.Va. 378 (1880); Peterson v. Struby, 25 Ind.App. 19, 56 N.E. 733 (1900); Anderson v. Star-Bair Oil Co., 34 Wyo. 332, 243 P. 394 (1926).
The Colorado Supreme Court, in Davidson v. Board of County Commissioners, 26 Colo. 549, 59 P. 46 (1899), approved of this rationale, and quoted with approval from Frink v. McComb, 60 F. 486 (D.Del.1894) (Wales, J., concurring), where it is stated:
"The counsel for the assignees contended that they were in the position of purchasers for a valuable consideration, without notice of the attorney's lien. But this does not satisfactorily appear. When they took the assignments they knew that [one judgment creditor] was insolvent, and that [the other judgment creditor] was unable to pay counsel fees, and they were thus put on inquiry as to the claims of the solicitors, of whose connection with the cause they had been informed . . . and at least had reason to suspect that there was no other source for the payment of those fees than a portion of the proceeds of the decree. [Thus] the want of actual notice of the assignees . . . would not enable them to take precedence of the attorney's lien."
Accordingly, inasmuch as the lien statute constitutes constructive notice of the lien, Collins v. Thuringer, supra, we hold that when an assignee of a judgment, or the proceeds thereof, knows at the time of taking such assignment that the assignor's financial position is such that his attorney in the action may have to rely on the proceeds to collect his fee, the assignee is under a duty to inquire as to whether the attorney intends to rely on his lien, failing which the assignee cannot claim to be a good faith purchaser and takes subject to the lien.
As previously stated, the trial court made no finding as to the amount due United. However, the evidence is undisputed that the amount to which United is entitled under its assignment substantially exceeds the amount on deposit with the court and available after satisfying the prior right of CM&P.
The judgment awarding CM&P a first and prior lien on the funds is affirmed. The judgment awarding USLife and Advance the next priorities is reversed. The cause is remanded with directions to pay from the funds on deposit on May 26, 1976, the date of the judgment, to CM&P $56,016.53 *1258 and to United Bank the balance of $182,247.73. The amount earned by the funds since May 26, 1976, shall be dispersed pro-rata to CM&P and United Bank.
ENOCH and SMITH, JJ., concur.