**In re METRIC METALS INTERNATIONAL, INC., Bankrupt.**

**STERLING NATIONAL BANK & TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**Charles BORNSTEIN, as Trustee of Metric Metals International, Inc., Defendant.**

**No. 80 Civ. 5414 (HFW).**

United States District Court, S. D. New York.

Nov. 9, 1981.

Proskauer, Rose, Goetz & Mendelsohn, New York City (Stephen Rackow Kaye, Lester M. Kirshenbaum, New York City, of counsel), for Sterling National Bank.

Sherman & Citron, P. C., New York City (Howard Karasik, New York City, of counsel), for trustee in bankruptcy.

## MEMORANDUM DECISION

HENRY F. WERKER, District Judge.

This is an appeal by Charles Bornstein, Trustee for Metric Metals International, Inc., from an order of Bankruptcy Judge Roy Babitt which denied his motion for summary judgment, granted plaintiff's motion for summary judgment and held that plaintiff's security interest arising from a security agreement between plaintiff and Metric Metals encompasses general intangibles including Federal, State and City tax refunds paid or to be paid to Metric Metals.

Pursuant to a security agreement dated September 7, 1977, the bankrupt agreed to give the Bank a security interest in "all the Debtor's Receivables present and future, whether or not now or hereafter specifically assigned or pledged to Secured Party, . . . whether now existing or hereafter created; all proceeds of such Receivables in whatever form, including cash, deposit accounts, negotiable instruments and other instruments for the payment of money; . . . [and] all other accounts due from Account Debtors to Debtor . . ."

Receivables were defined in the ¶ 4(a) of the agreement as follows:

"Receivables" includes but is not limited to open accounts whether or not matured and whether or not executory, contract rights, chattel paper, notes, rental receivables, installment payment obligations and other obligations for the payment of money payable to Debtor and created by Debtor or acquired by Debtor from others, and contracts, documents, invoices and other instruments evidencing the same, which Receivables are created or otherwise arise out of the sale of mer-

chandise or the supplying of services by Debtor in the regular course of its business or otherwise. The term includes any of the foregoing classified under the Uniform Commercial Code as accounts receivable, contract rights, general intangibles, chattel paper or instruments, and all cash and non-cash proceeds thereof, and all security therefor and all of Debtor's rights present or future to any property sold or leased which is represented thereby.

The financing statements filed with the Secretary of State of New York and the Office of the Register of New York City, list as covered collateral:

all now owned and hereafter acquired accounts, notes, documents, instruments, contract rights, chattel paper, general intangibles and interest of Debtor in any goods thereby represented.

The court below found that under the language of ¶ 4(a) of the security agreement:

"the collateral for the security interest 'includes but is not limited to' accounts and contract rights 'which . . . are created or otherwise arise out of the sale of merchandise or the supplying of services . . . in the regular course of [debtor's] business or otherwise. This includes any of the foregoing classified under the Uniform Commercial Code as . . . general intangibles . . . .' "

Although the court below observed that the security agreement was somewhat unclear and ambiguous, it found upon reading it in light of the financing statement and the conduct of the parties, that general intangibles were within the scope of the security interest held by the Bank.[1]

The Trustee's principal contention is that tax refunds do not constitute receivables as that term is used in the security agreement. According to the Trustee, receivables under the agreement are limited to those which are "created or otherwise arise out of the sale of merchandise or the supplying of services by Debtor in the regular course of its business or otherwise," and the tax refunds simply did not arise in this manner. The Trustee further contends that any reference to the U.C.C. definition of general intangibles in ¶ 4(a) is limited to the "Receivables" previously enumerated in the security agreement.

Sterling National Bank contends that there is no basis for the limitation that the Trustee seeks to impose on the language of paragraph 4(a). Among its arguments is the contention that ¶ 5 of the agreement grants the Bank a security interest in the Debtor's Receivables as well as in "all other accounts due from Account Debtors to Debtor." According to the Bank, the term "Account Debtors" as used in the agreement includes those obligated on general intangibles.

Upon a fair reading of the security agreement, this court concludes that there is no ambiguity as to whether the tax refunds were within the scope of plaintiff's security and that summary judgment is appropriate on the basis of the clear language of the agreement.

■ Under ¶ 5 of the security agreement plaintiff was granted a continuing security interest in any "accounts due from Account Debtors to Debtor." Account Debtor is defined in ¶ 4(d) of the agreement as "a person . . . who is obligated on an account, chattel paper, contract right, general intangible, instrument or other receivable." As-

---

1. The court below found that the terms of the security agreement were ambiguous and looked to extrinsic evidence in order to ascertain the intent of the parties. It found that the language of the financing statement as well as the conduct of the parties after the contract was made resolved whatever doubt may have existed about whether general intangibles comprised part of the Bank's security. Although this court affirms the judgment of the Bank-

ruptcy Court, it appears that the grant of summary judgment on the basis of extrinsic evidence was error. As noted by the court in *Flli Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563 (2d Cir. 1977), once it is determined that contractual language is "ambiguous and subject to two fairly reasonable interpretations, . . . it presents a triable issue of fact which makes the grant of summary judgment improper." *Id.* at 566.

suming for the moment that tax refunds may be considered general intangibles, it must be concluded that general intangibles due to Metric Metals from other persons or entities were within the purview of the security granted to the Bank.[2]

Thus, whether or not the definition of "Receivables" in ¶ 4(a) of the security agreement was broad enough to include general intangibles, I nevertheless must conclude that the grant of security under ¶ 5 of the agreement included general intangibles owing to the bankrupt from third parties.

■ The next issue that must be resolved is whether tax refunds may properly be considered general intangibles. General intangibles are defined in the code as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money.' N.Y.U.C.C. § 9–106 (McKinney Supp. 1980–1981). Although there is little authority with respect to whether a tax refund is a general intangible, the cases and commentators that have addressed the question agree that tax refunds constitute general intangibles as defined in the Code. *See In re Certified Packaging, Inc.*, 8 U.C.C.Rep. 95 (D.C.Utah 1970); P. Coogan, W. Hogan & D. Vagts, 1 *Secured Transactions Under the Uniform Commercial Code* § 5A.09[1] (19—). In a similar vein, it has been held that money that a claimant expects to recover in a lawsuit is a general intangible. *Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 580 P.2d 1251 (1978). Based upon the foregoing, I conclude that an anticipated tax refund constitutes a general intangible.

Appellant's next contention is that the security interest held by plaintiff is voidable by virtue of the Assignment of Claims Act, 31 U.S.C. § 203. Under that Act:

all transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, ... except as hereinafter provided, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.

Appellant contends that insofar as "the security agreement was not executed in the presence of at least two attesting witnesses, after the 'allowance' of the Tax Refund, the ascertainment of the amount due, and the issuance of a warrant for the payment thereof," the alleged assignment of the tax refund was null and void. Appellee argues that as between assignor and assignee, noncompliance with the Act does not impair the effectiveness of the Bank's security interest in the Debtor's federal tax refund claim.

■ On this issue, the Court below ruled that the Act would not invalidate the assignment in question as between the parties to the assignment, even though it may not have been valid as against the United States. This ruling was correct under the principles set forth in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Because there is no suggestion that the government might become embroiled in conflicting claims to the tax refunds by the assignor and assignee, the assignment should be given effect between the parties, even though it failed to comply with the statute. *See id.* at 384, 86 S.Ct. at 517; *King v. Gilbert*, 569 F.2d 398 (5th Cir. 1978); *In re Lagerstrom*, 300 F.Supp. 538, 540 (S.D.Ill.1969).[3]

---

**2.** As "Account Debtor" is defined as those "obligated to the Debtor on an account, chattel paper, contract right, general intangible, instrument or other receivable," it must be concluded that the term account as used in ¶ 5 of the security agreement is not limited to an account as defined in U.C.C. § 9–106.

**3.** The court having concluded that plaintiff's security interest in the tax refund was perfected on 9/14/81 and that the security interest was not voidable or fraudulent for any of the reasons asserted by the trustee, appellant's arguments with respect to §§ 70(c) & 70(e)(1) of the Bankruptcy Act are unavailing for the reasons stated in the opinion below.

■ Appellant's next contention is that the debtor was not authorized to grant plaintiff a security interest in tax refunds or general intangibles and accordingly, the security interest was null and void. This contention is without merit. The corporate resolution authorizing the financing arrangements between Sterling and the debtor provide:

it is to the best interests of this corporation to enter into the agreements with Sterling National Bank & Trust Company of New York. . . . providing for: the sale, pledge, assignment, negotiation and guarantee to Sterling of accounts, notes, documents, instruments, chattel paper and other forms of obligations; . . .

Clearly, the "other forms of obligations" language of the resolution was broad enough to authorize the assignment of rights to tax refunds due or to become due to Metric Metals.

Appellant's final contention is that plaintiff's security interest in the tax refunds is governed by the common law of New York rather than the provisions of the U.C.C., and that under the common law, the assignment in question was a nullity because it was made before the claim was allowed and prior to the date on which the fund came into existence.

■ Appellant's contention that the U.C.C. is inapplicable to the case at bar must be rejected. U.C.C. § 9–104 excludes from the coverage of Article 9 "a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property." N.Y.U.C.C. § 9–104(a) (McKinney Supp. 1980–1981). This court has held above that the Assignment of Claims Act in no way affected the assignment of the tax refund as between assignor and assignee. Thus, preemption will result under § 9–104 only if the rights of a third-party, the United States, are affected by the transaction. I am unable to conclude that rights of the United States are affected by the transaction in question in a manner that was meant to be protected

by the Assignment of Claims Act. First, as noted above, there has been no suggestion that the United States may be subject to conflicting claims. Second, it appears that all sums due from the United States on the bankrupt's federal tax refund were paid to the Trustee prior to the commencement of this lawsuit. *See* Plaintiff's Rule 9(g) Statement, No. 7; Defendant's Rule 9(g) Statement, No. 11. Thus:

Here the only contest is between the assignee and the trustee in bankruptcy of the assignor, and the government is not exposed to the threat of multiple claims since the claim has already been paid and the government's liability is at an end. Thus, since the statute (31 U.S.C. Sec. 203) is for the protection of the government, and not for the regulation of the assignment as between the private parties involved . . . the federal statute does not apply and should not [be] deemed controlling . . . .

*In re Lagerstrom*, 300 F.Supp. 538, 540 (S.D.Ill.1969) (quoting *Danning v. Mintz*, 367 F.2d 304, 306 (9th Cir. 1966), *cert. denied*, 386 U.S. 990, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). Accordingly, this court concludes that the exception provided for in § 9–104(a) is inapplicable on the facts of the present case and therefore, that the provisions of the Code must be applied in determining the effectiveness of plaintiff's security interest.

■ Under U.C.C. 9–303(1), "a security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. . . . If such steps are taken before the security interest attaches, it is perfected at the time when it attaches." Under U.C.C. § 9–203, a security interest attaches when "the debtor has signed a security agreement which contains a description of the collateral, value has been given and the debtor has rights in the collateral. In this case, all the requirements for attachment were fulfilled by mid-September 1977. The debtor signed a security agreement describing the collateral, the bank gave value to the debtor in the form of loans and the debtor had prop-

erty rights in the claims for tax refunds. *See Segal v. Rochelle*, 382 U.S. at 379–81, 86 S.Ct. at 514–15.[4]

The only remaining question is whether the perfection provisions of the Code were complied with. I find that they were. It is undisputed that financing statements were filed with the Secretary of State on September 14, 1977 and with the City Register of New York County on September 8, 1977. Plaintiff's Rule 9(g) Statement, No. 3; Defendant's Rule 9(g) statement, No. 5.

### CONCLUSION

The order of the Bankruptcy Court of August 18, 1980, granting summary judgment for Sterling National Bank and denying summary judgment to the Trustee is affirmed.

SO ORDERED.

---

**4.** It is not contended that the bankrupt did not pay taxes on its net income within the three years preceding the tax loss or that a tax loss was not suffered during the year of bankruptcy. *Segal v. Rochelle*, 382 U.S. at 380, 86 S.Ct. at 515.