**DENVER TEC BANK, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Defendant–Appellee.**

**No. 91CA1317.**

Colorado Court of Appeals, Div. V.

Nov. 5, 1992.

Haligman and Lottner, P.C., Scott L. Levin, Englewood, for plaintiff-appellant.

Fredericks, Pelcyger, Hester & White, John Fredericks, III, Boulder, Ann S. Du-Ross, Colleen B. Bombardier, Robert D. McGillicuddy, Michelle Kosse, Washington, DC, for defendant-appellee.

Opinion by Judge JONES.

Plaintiff, Denver Tec Bank, successor in interest to TecNational Bank (TNB), appeals the summary judgment granting Federal Deposit Insurance Corporation (FDIC) a superior interest in two equipment acquisition agreements in which both parties claim priority rights. We affirm.

Two equipment acquisition agreements were entered into between Lease Group Resources and the Commonwealth of Pennsylvania (Penn) and between Lease Group Resources and the Johnstown Housing Authority (JHA). The agreements provided that, in exchange for various office equipment, Penn and JHA, respectively, would remit a series of payments to Lease Group Resources.

In June 1980, Municipal Investor Service, Inc. (MIS) purchased both the Penn and JHA agreements, and it took possession of multiple originally executed duplicates of each of those agreements. MIS then sold the agreements to John Terborg, who was Vice President, General Counsel, and Chairman of the Board of MIS. The Certificates of Sale and Assignment, both dated July 1, 1988, indicate that Terborg purchased an "undivided 100% ownership in the rights, title and remedies" to the payments due under both agreements. MIS provided Terborg with originally executed copies of both the Penn and JHA agreements, but it also retained duplicate originals of each of those agreements.

Terborg then used the two agreements as collateral to obtain two loans from Cherry Creek National Bank (CCNB). On July 27, 1988, Terborg assigned an originally executed copy of the Penn agreement to CCNB as security for a $24,000 loan and, on September 2, 1988, he assigned an originally executed copy of the JHA agreement to CCNB as security for a $79,932.84 loan.

CCNB recorded its security interests in the respective agreements by filing financing statements with the Secretary of State on July 29, 1988, and September 9, 1988. The statements identified Terborg as CCNB's debtor and listed the Penn and JHA agreements as collateral for the respective loans.

In October 1988, MIS assigned original copies of the Penn and JHA agreements to TNB as collateral for a $145,114 loan. TNB filed financing statements with the Secretary of State on November 2, 1988, which identified MIS as TNB's debtor and listed the JHA and Penn agreements as part of the collateral for the loan.

In May 1989, after MIS defaulted on the payment of its loan from TNB, TNB filed the suit here against MIS and Terborg, as guarantor of the loan, and additionally asserted a claim for declaratory judgment as to TNB's priority rights against CCNB in the Penn and JHA agreements. Because CCNB was declared insolvent and placed into federal receivership in August 1990, FDIC is now the successor in interest to CCNB and was substituted as the real party in interest in the action herein.

TNB and FDIC both moved the court for summary judgment to resolve which party held a superior interest in the two agreements. The trial court determined that FDIC held an interest in the agreements that was superior to that of TNB because CCNB had been the first to perfect its security interests in the two agreements by filing appropriate financing statements with the Colorado Secretary of State's Office. Denver Tec Bank, as successor to TNB, thereafter commenced this appeal.

Plaintiff contends that the trial court erred in determining that FDIC has a first priority perfected security interest in the Penn and JHA agreements superior to the security interest held by plaintiff. We disagree.

Neither party disputes that the Penn and JHA agreements are chattel paper as defined in § 4–9–105(1)(b), C.R.S. (1992 Repl. Vol. 2), nor that Article 9 of the Uniform Commercial Code (UCC) applies to the creation of a security interest in the chattel paper. Section 4–9–102(1)(b), C.R.S. (1992 Repl.Vol. 2).

Under Article 9, in order to create an enforceable security interest, the interest must first be attached, and then it must be perfected. Section 4–9–303(1), C.R.S. (1992 Repl.Vol. 2). A security interest attaches to collateral when the requirements for attachment have been met, including:

(a) The collateral is in the possession of the secured party ... or the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) Value has been given; and

(c) The debtor has rights in the collateral.

Section 4–9–203, C.R.S. (1992 Repl.Vol. 2); *Midland Bean Co. v. Farmers State Bank*, 37 Colo.App. 452, 456, 552 P.2d 317, 322 (1976). We determine that the requirements for attachment were satisfied as to the interests of both CCNB and TNB.

■ As to the attachment of CCNB's interest, plaintiff's challenge to the validity of the "assignment" of the Certificates of Sale and Assignment from MIS to Terborg is not meritorious because the Certificates also reflect that Terborg had "purchased" a 100% ownership in the rights to the payments due under the agreements. Since the validity of the sale aspect of the transaction has not been raised, we consider a valid purchase to have occurred.

Thus, contrary to plaintiff's argument, Terborg was the only "debtor" required to sign CCNB's security agreement in order for the security interest to attach. Hence, Terborg's signature on CCNB's security agreement satisfied the requirement for attachment of CCNB's security interest pursuant to § 4–9–203(1)(a), C.R.S. (1992 Repl.

Vol. 2). Accordingly, we conclude that the requirements for attachment of a security interest have been satisfied.

Once a security interest attaches to collateral, it becomes enforceable against the debtor under the UCC, and the exclusive right to enforcement may be perfected by one of two methods. A party may perfect its interest either by taking possession of the collateral pursuant to § 4–9–305, C.R.S. (1992 Repl.Vol. 2), or by correctly filing a financing statement with the Secretary of State pursuant to § 4–9–304(1), C.R.S. (1992 Repl.Vol. 2).

■ The parties to this action do not dispute that the trial court properly relied upon *Funding Systems Asset Management Corp. v. Chemical Business Credit Corp.*, 111 B.R. 500 (Bankr. W.D.Penn.1990), in holding that a security interest in the agreements could not have been perfected by possession because neither party possessed all of the multipally-executed originals of the agreements. Hence, as the trial court acknowledges, a security interest in the agreements could only have been perfected through proper filing of a financing statement with the Secretary of State. Section 4–9–304(1), C.R.S. (1992 Repl.Vol. 2).

If both parties' security interests had properly attached and had been perfected by the filing of financing statements, priority in the collateral claimed by the competing interests could be determined by applying the general rule of "first in time, first in right," as set forth in § 4–9–312(5)(a), C.R.S. (1992 Repl.Vol. 2). That statute provides as follows:

> Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

*See Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 437, 580 P.2d 1251, 1256 (1978).

■ The trial court held, pursuant to § 4–9–312(5), that FDIC, as the successor in interest to CCNB, has a priority interest in the agreements superior to the interest of plaintiff, as successor in interest to TNB, because CCNB was the first to perfect its security interest by filing a financing statement with the Secretary of State. We agree that this first to file rule is ordinarily properly applied to determine possession of competing security interests in the same collateral when, as here, neither party has possession of the collateral, *cf.* § 4–9–308, C.R.S. (1992 Repl.Vol. 2), and neither party is an innocent holder in due course or a bonafide purchaser. *Cf.* § 4–9–309, C.R.S. (1992 Repl.Vol. 2). *See* J. White & R. Summers, *Uniform Commercial Code* §§ 26–4 & 18 (3d ed.1988).

There are, however, certain extraordinary circumstances that may cause a determination of priority rights in security interests in the same collateral to be removed from the purview of the "first in time, first in right" rule. 9 W. Hawkland, *Uniform Commercial Code Series* § 9–312:06 (1991).

The first-to-file rule has been abandoned when the creation of the second security interest is a fraudulent conveyance and the secured party participates in the fraud. *King v. Ionization International, Inc.*, 825 F.2d 1180 (7th Cir.1987).

In addition, the court declined to apply the rule in *Bank of the West v. Commercial Credit Financial Services, Inc.*, 852 F.2d 1162 (9th Cir.1988), when a security interest attached to collateral as the result of the operation of an after-acquired property clause and two different debtors, both corporate subsidiaries, conveyed security in the same collateral to two different secured parties.

■ Here, there was no allegation that either party participated in fraud, and the security interests did not attach as the result of the operation of an after-acquired property clause. Thus, we do not perceive an extraordinary circumstance operating here such as would remove this situation from the operation of the "first in time, first in right" rule.

We acknowledge that, under the circumstances here, the "notice" function of the first-to-file rule may be subverted if multiple creditors received secured interests in the same collateral from different debtors, thus rendering the indexing system used to trace interests, which is based upon the debtor's name, § 4–9–403, C.R.S. (1992 Repl.Vol. 2), of less assistance in providing notice of the security interests. However, an alternative interpretation would cause injury to the equally innocent creditor who was first to file.

We conclude that the Colorado UCC should not be interpreted as adopting such a policy. Any such changes in these laws must be a function for the General Assembly. *See In re Cushman Bakery,* 526 F.2d 23 (1st Cir.1975), *cert. denied sub nom. Agger v. Seaboard Allied Milling Corp.,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976).

We reject plaintiff's assertion that FDIC has no security interest because Terborg did not file a financing statement. The UCC does not require an owner of collateral to perfect his or her ownership interest by filing such a document. Thus, plaintiff's arguments to this effect, as well as its remaining contentions, are without merit or are rendered moot by our disposition.

The judgment of the trial court is affirmed.

HUME and MARQUEZ, JJ., concur.